982 P.2d 917

ABERDEEN–SPRINGFIELD CANAL
COMPANY, Plaintiff–Respondent—
Cross–Appellant,

v.

George PEIPER and Lavaudis Peip-
er, husband and wife, Defendants–
Appellants—Cross–Respondents.

No. 23912.

Supreme Court of Idaho,
Twin Falls, March 1999 Term.

May 26, 1999.

Rehearing Denied Aug. 18, 1999.

Jim Jones & Associates, Boise, for appellants. Jim Jones argued.

Ling, Nielsen & Robinson, Rupert, for respondent. Brent C. Tingey argued.

SILAK, Justice.

This is an appeal and cross-appeal from the district court's order granting summary judgment and entering foreclosure of assessment liens in favor of the Aberdeen–Springfield Canal Company (ASCC), pursuant to Chapter 22, Title 42 of the Idaho Code. We affirm.

## I.

## FACTS AND PROCEDURAL BACKGROUND

### A. Facts

In 1969, George and LaVaudis Peiper (the Peipers) purchased agricultural property in Bingham County. The Peiper property is located within the ASCC irrigation system, and the Peipers' predecessor was a stockholder of the ASCC. The ASCC is an operating company created under the Carey Act of 1894, 43 U.S.C. § 641.

The Carey Act aided states in the reclamation of desert lands to provide irrigation water to settlers by authorizing the Secretary of the Interior to contract to patent such desert lands as the State should cause to be irrigated and occupied, provided, however, that the lands would be restored to the public domain if reclamation had not begun and plans were not carried out within stated time limits. *See Andrus v. Idaho*, 445 U.S. 715, 717–18, 100 S.Ct. 1450, 1451–52, 63 L.Ed.2d 739, 743–44 (1980). Since "the average farmer did not have sufficient means to construct, own, or operate an irrigation ditch to convey water to his land," the creation of Carey Act canal companies "made possible the distribution of water over large areas of land, often remote from the source of supply, and increased the availability of irrigated farmland at reasonable costs." *Jacobucci v. District Court*, 189 Colo. 380, 541 P.2d 667, 671 (1975).

ASCC's by-laws provide that the transfer of a stockholder's land operates as a transfer of the stock and the corresponding right to use ASCC water, "whether expressed therein or not." When the Peipers purchased the property, all irrigation water was supplied by a well installed by their predecessor. The

Peipers investigated the possibility of irrigating with ASCC water, but found that the ditch connecting the property to the ASCC headgate had been destroyed a few years before. The Peipers sought permission to install a new ditch, but the owner of the intervening land was using wheel lines to irrigate, and told the Peipers they "could forget about putting in another [ditch]." The Peipers have requested no water from the ASCC since purchasing the land, and the ASCC has delivered no water to the property since 1962. ASCC has always been able to deliver water to the Peipers at Headgate No. M–21–5, located approximately three-quarters of a mile from the Peiper property. The ASCC has continued to assess maintenance charges against the Peipers.

## B. Procedural Background

On December 24, 1986, ASCC filed suit against the Peipers in Bingham County Case No. CV–86–13282, seeking foreclosure of liens for assessments levied against the property for 1983, 1984 and 1985. The Peipers filed an answer on February 12, 1987. On December 16, 1991, the Peipers moved to dismiss for failure to prosecute under Idaho Rule of Civil Procedure 41(b). The motion was denied. On October 2, 1992, ASCC filed its second amended complaint in Bingham County Case No. CV–90–13836, seeking recovery of assessments for the years 1984 through 1990. The district court dismissed the claims for 1983, 1986 and 1987 because the statute of limitations had run with respect to those claims. ASCC filed another complaint, Bingham County Case No. CV–93–14195, seeking assessments for 1991 through 1993. On August 9, 1994, the district court determined that it did not have subject matter jurisdiction to rule on the Peipers' claim that ASCC had forfeited its right appurtenant to the Peiper property. On January 12, 1995, the Peipers filed their answer and counterclaim in Case No. CV–93–14195, alleging partial forfeiture of the ASCC water right appurtenant to their property, the unconstitutionality of I.C. § 42–2201, a civil rights violation under 42 U.S.C. § 1983, and unjust enrichment. In the counterclaim, the Peipers sought restitution damages for the unjust enrichment claim, and a declaratory judgment stating they were not liable for the assessments. The three cases were eventually consolidated and transferred to the Snake River Basin Adjudication (SRBA) court on January 31, 1995.

On April 10, 1996, the SRBA court entered an amended order granting summary judgment in favor of ASCC. On June 5, 1996, the SRBA court entered an order granting the Peipers' motion to disallow attorney fees. ASCC later brought a motion to reconsider the order disallowing attorney fees, which was denied. That same day, the SRBA court also entered an order transferring venue back to the seventh district court in Bingham County, having resolved all issues over which it had exclusive jurisdiction. On December 9, 1996, ASCC filed its complaint in Bingham County Case No. CV–96–1395, seeking assessments for 1994 through 1996. ASCC sought summary judgment on that complaint, as well as a decree of foreclosure for that case and the three consolidated cases. On May 5, 1997, the district court entered summary judgment on the latest case and issued an order for decree of foreclosure. A judgment and decree on all four cases was entered on May 27, 1997.

## II.

## ISSUES ON APPEAL

The issues presented on appeal are as follows:

1. Whether the SRBA court erred in holding that ASCC had not forfeited any water right it claimed to hold appurtenant to the Peiper property.

2. Whether the SRBA court erred in holding that the doctrine of unjust enrichment did not preclude recovery by ASCC.

3. Whether the SRBA court erred in holding that ASCC had the legal authority to assess landowners based on benefits received when no water was actually delivered.

4. Whether the SRBA court erred in holding that I.C. § 42–2201 was not violative of procedural and substantive due process rights.

5. Whether the lower courts erred in failing to dismiss the 1984 and 1985 claims for failure to prosecute.

6. Whether the rulings in favor of ASCC on its complaints were procedurally defective.

The issue presented on cross-appeal is as follows:

1. Whether the SRBA court erred in determining that ASCC is not entitled to attorneys fees under I.C. § 12–120(1).

## III.

## STANDARD OF REVIEW

In an appeal from an order granting summary judgment, this Court's standard of review is the same standard used by the district court in ruling on a motion for summary judgment. *See, e.g., First Security Bank v. Murphy,* 131 Idaho 787, 790, 964 P.2d 654, 657 (1998); *Richards v. Idaho State Tax Comm'n,* 131 Idaho 476, 478, 959 P.2d 457, 459 (1998). Summary judgment is appropriate only when the pleadings, depositions, affidavits and admissions on file show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See Murphy,* 131 Idaho at 790, 964 P.2d at 657.

Generally, when considering a motion for summary judgment, a court "liberally construes the record in a light most favorable to the party opposing the motion and draws all reasonable inferences and conclusions in that party's favor." *Brooks v. Logan,* 130 Idaho 574, 576, 944 P.2d 709, 711 (1997). However, where the evidentiary facts are undisputed and the trial court rather than a jury will be the trier of fact, "summary judgment is appropriate, despite the possibility of conflicting inferences because the court alone will be responsible for resolving the conflict between those inferences." *Murphy,* 131 Idaho at 790, 964 P.2d at 657 (citing *Riverside Development Co. v. Ritchie,* 103 Idaho 515, 519 n. 1, 650 P.2d 657, 661 n. 1 (1982)).

## IV.

## ANALYSIS

### A. The District Court Did Not Err In Granting ASCC's Motion For Summary Judgment.

**1. The SRBA court did not err in holding that ASCC had not forfeited any water right it claimed to hold appurtenant to the Peiper property.**

The Peipers argue that since no ASCC water has been applied to beneficial use on their property for more than thirty years, any ASCC water right appurtenant to their land has been forfeited. The forfeiture statute states:

All rights to the use of water acquired under this chapter or otherwise shall be lost and forfeited by a failure for the term of five (5) years to apply it to the beneficial use for which it was appropriated and when any right to the use of water shall be lost through nonuse or forfeiture such rights to such water shall revert to the state and be again subject to appropriation under this chapter.

I.C. § 42–222(2). This statute was recently held to provide for partial forfeiture of water rights where an appropriator "cannot apply a portion of a water right to beneficial use during any part of the statutory period." *State v. Hagerman Water Right Owners,* 130 Idaho 727, 735, 947 P.2d 400, 408 (1997). The SRBA court held as a matter of law that since ASCC was the appropriator who held legal title to the water rights, only ASCC could forfeit the portion of its water right appurtenant to the Peiper property.

ASCC, as a Carey Act operating company, holds title to the canal system and is the appropriator of the water rights involved in this case. *See Big Wood Canal Co. v. Chapman,* 45 Idaho 380, 391, 263 P. 45, 48 (1927). The Peipers are ASCC stockholders, and as such are entitled to a share of the water and obliged to pay a proportionate share of the operating company's maintenance costs, "regardless of whether such water is used or not...." I.C. § 42–2201. This Court has never addressed the question of whether a stockholder's decision not to use the water

provided by a Carey Act operating company triggers the forfeiture provision of I.C. § 42–222(2).

In almost every case where forfeiture has been before this Court, the Court has held I.C. § 42–222(2) provides that "an *appropriator* who fails to apply the water right beneficially for a period of five consecutive years loses all rights to use such water, regardless of intent." *Dovel v. Dobson*, 122 Idaho 59, 62, 831 P.2d 527, 530 (1992) (emphasis added); *see also Crow v. Carlson*, 107 Idaho 461, 467, 690 P.2d 916, 922 (1984); *Sears v. Berryman*, 101 Idaho 843, 847, 623 P.2d 455, 458 (1981); *Gilbert v. Smith*, 97 Idaho 735, 738, 552 P.2d 1220, 1223 (1976); *Hodges v. Trail Creek Irrigation Co.*, 78 Idaho 10, 16, 297 P.2d 524, 527 (1956); *Carrington v. Crandall*, 65 Idaho 525, 531–32, 147 P.2d 1009, 1011 (1944). The forfeiture statute "was not intended to apply to settlers within a Carey Act project who were not themselves the appropriators of the water from the public stream of the state." *Idaho Farms Co. v. North Side Canal Co.*, 24 F.Supp. 189, 197 (D.Idaho 1938), *rev'd on other grounds*, 107 F.2d 481 (9th Cir.1939).

A finding of forfeiture in this case, where the appropriator did nothing to cause the nonuse of the water, would have troubling consequences for all Carey Act operating companies. Such a ruling would give stockholders, who are not appropriators, the power to determine the fate of ASCC's water rights. If a number of stockholders chose not to use their share of ASCC's water for the statutory period, ASCC's water right would gradually revert to the state through partial forfeiture. *See* I.C. § 42–222(2); *Hagerman Water Right Owners*, 130 Idaho at 735, 947 P.2d at 408. If the Peipers' argument were valid, ASCC could only watch helplessly while its water right was lost.

This Court has also held that there can be no forfeiture if the appropriator is prevented from exercising his right to the water by circumstances over which he or she has no control. *See Jenkins v. Dep't of Water Resources*, 103 Idaho 384, 389, 647 P.2d 1256, 1261 (1982); *Hodges*, 78 Idaho at 16, 297 P.2d at 527. In this case there were several factors outside of ASCC's control, such as the destruction of the ditch connecting the Peiper land to the headgate, the neighbor's unwillingness to allow reconstruction of the ditch, and the Peipers' individual decision not to use ASCC water.

■ Forfeiture of water rights is "not favored, and clear and convincing proof is required to find a forfeiture." *Dovel*, 122 Idaho at 63, 831 P.2d at 531 (quoting *Jenkins*, 103 Idaho at 389, 647 P.2d at 1261). "The governmental function in enacting ... the entire water distribution system under Title 42 of the Idaho Code is to further the state policy of securing the maximum use and benefit of its water resources." *Hagerman Water Right Owners*, 130 Idaho at 735, 947 P.2d at 408 (1997) (quoting *Nettleton v. Higginson*, 98 Idaho 87, 91, 558 P.2d 1048, 1052 (1977)). The Peipers wish to use forfeiture only to avoid paying maintenance assessments. A finding of forfeiture here would do nothing to advance the policy reasons that motivate the statute's existence. Therefore, we affirm the SRBA court's determination that no water rights were forfeited in this case.

**2. The SRBA court did not err in holding that the doctrine of unjust enrichment did not preclude recovery by ASCC.**

■ The Peipers argue that any recovery by ASCC would constitute unjust enrichment. Peipers also allege in a counterclaim that they received no benefit from the water held in trust by ASCC, and that ASCC inequitably benefitted by "renting" the Peipers' share of water to other water users. The Peipers also argue that ASCC benefits unjustly by assessing fees even though water cannot be delivered to the property.

The SRBA court held the equitable remedy of quasi-contractual relief did not apply, since the Peipers are contractually obligated to pay the assessment because of their ownership of ASCC stock, whether or not ASCC water was used. The SRBA court also held that it was possible for the Peipers to obtain ASCC water by securing an easement for a replacement ditch under Sections 42–1102 and 42–1106 of the Idaho Code. Since the

Peipers had adequate legal remedies to gain access to the headgate, the SRBA court held that ASCC had not been unjustly enriched.

This Court has held that "in order to establish the prima facie case for unjust enrichment, the plaintiff must show that there was: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff of the value thereof." *Curtis v. Becker*, 130 Idaho 378, 382, 941 P.2d 350, 354 (1997) (citing *Idaho Lumber, Inc. v. Buck*, 109 Idaho 737, 745, 710 P.2d 647, 655 (Ct.App.1985)).

Peipers have also failed to show that any benefit to ASCC was received under inequitable circumstances. Even though the Peipers' neighbor told George Peiper that he was using wheel lines and that Peiper could "forget about" installing a new ditch, the Peipers are entitled by statute to condemn an easement for a replacement ditch. Idaho Code § 42–1106 states: "In case of the refusal of the owners or claimants of any lands, through which any ditch, canal or conduit is proposed to be made or constructed, to allow passage thereof, the person or persons desiring the right of way may proceed as in the law of eminent domain." *Id.; see also White v. Marty*, 97 Idaho 85, 86–87, 540 P.2d 270, 271–72 (1975), overruled on other grounds by *Carr v. Magistrate Court*, 108 Idaho 546, 549, 700 P.2d 949, 952 (1985).

The fact that installing a new ditch connecting their land to the headgate might be expensive or inconvenient is irrelevant. Since an easement for a new ditch could have been condemned, the Peipers have always had access to ASCC water if they wished to acquire it. Since there are adequate legal remedies available to the Peipers, there is no need to employ the equitable doctrine of unjust enrichment in their behalf. *See Thomas v. Campbell*, 107 Idaho 398, 404–05, 690 P.2d 333, 339–40 (1984). The SRBA court held that under these circumstances, the equitable remedy of unjust enrichment did not apply. We conclude that the SRBA court did not err in granting summary judgment in behalf of ASCC on this issue.

### 3. The SRBA Court did not err in holding that ASCC had legal authority to assess landowners based on "benefits received" where no water has been delivered

■ The Peipers argue that ASCC does not have authority to assess landowners based on benefits received under the applicable provisions of the Idaho Code and ASCC Articles of Incorporation. Idaho Code § 42–2201 authorizes Carey Act operating companies to "levy and collect from the holders or owners of all land to which the water and water rights belonging to or diverted by said irrigation works are dedicated or appurtenant, regardless of whether water is used by such owner or holder." The Peipers maintain, however, that ASCC cannot charge assessments on their stock unless provision for assessment is expressly made in ASCC's articles of incorporation, pursuant to prior Section 30–1–19 of the Idaho Code (1996).

■ The ASCC Articles of Incorporation contain the following language:

[ASCC] shall have power to levy fixed charges and assessments ratably and according to benefits derived, against such lands, and to collect from its stockholders and all persons entitled to use water through said system, the expense of delivering the water upon such lands, to collect tolls, rentals, assessments and maintenance charges, based upon the number of shares of each stockholder, and the right to defray any and all expenses incident to the maintenance or operating of said canal system.

The Peipers also argue that under Idaho Law, "benefits derived" means "water received," and that since they received no water, ASCC did not have authority to levy assessments against them.

The SRBA court held that I.C. § 42–2201 and ASCC's articles of incorporation provide for the assessment of shareholders, and that "the benefit embraced by the members of the irrigation company is the right to demand delivery of water supplied by the canal company and the resulting enrichment of their

property by virtue of having access to the water."

The SRBA court did not err in determining that ASCC had authority to levy and collect assessments from the Peipers, even though no water was used on the Peiper land. Section 42–2201 clearly authorizes Carey Act operating companies to levy and collect assessments from landowners within the canal system "regardless of whether water is used by such owner or holder, on or for his land." The ASCC articles of incorporation also state that ASCC has authority to collect "from its stockholders and all persons entitled to use water" expenses and maintenance assessments, "based on the number of shares of each stockholder."

The Peipers do not appear to contest that ASCC had power to *collect* assessments from stockholders; rather, they argue that ASCC's articles of incorporation give power to *levy* assessments only according to "benefits derived."[1] The Peipers assert that under Idaho Law, "benefits derived" can only mean "water received." In support of this argument, the Peipers cite *Colburn v. Wilson*, 24 Idaho 94, 132 P. 579 (1913). In *Colburn*, this Court held that the maintenance assessments charged by an irrigation district must be uniform throughout the district, even though it cost less to provide one side of the district with irrigation water than the other side. *See id.* at 104, 132 P. at 582. In reaching this holding, the Court stated:

> It is apparent from the creation of the district and the construction of the system and the maintenance of such system, that there can be no benefit to the land from the maintaining and operating of such irrigation system, other than the benefit arising from the supplying of the needed water. The supplying of the water is the benefit sought by the provision of the act and the whole benefit is the water sup-

plied, and the incident of such supply of water is the expenditure.

*Id.* at 103, 132 P. at 581. *Colburn* also states, however, that in order to bring the land under cultivation

> [T]he land and water must be brought together in a manner to make the land productive, and that such results can be accomplished by all the owners of all lands within the district which are *irrigable* being brought together in one project for the purpose of accomplishing the general purpose. To accomplish this purpose, the legislature intended that *each* owner of land *susceptible of irrigation* within the district will be *greatly benefitted by the organization of the district* and the application of water, ... supplied by such organization, to all the lands within the district.... In other words, ... it was the intention of the legislature that all lands within an irrigation district available for and subject to irrigation, under the system constructed, must be considered as a whole, and that the assessment shall be spread upon *all* the lands of the district which are or *may be supplied* with water by such district, under said system.

*Id.* at 102–03, 132 P. at 581. (emphasis added). In the present case, the Peipers owned land susceptible of irrigation within the ASCC, and they benefitted greatly by the organization of the district and the availability of water supplied at their headgate. Furthermore, as the demand for water in this state continues to increase, the Peipers' ASCC stock may become quite valuable. Under *Colburn* and other cases, the benefit derived from belonging to an irrigation project is the right to receive water. *See, e.g., Jacobucci v. Dist. Court*, 189 Colo. 380, 541 P.2d 667, 672 (1975); *Smith v. Enter. Irrigation Dist.*, 160 Or. 372, 85 P.2d 1021 (1939). The articles of incorporation give ASCC authority to levy assessments to stockholders regardless of

---

1. The Peipers stress the distinction between "levy" (meaning to determine the amount of assessment for which the stockholder is liable) and "collect" (to actually take possession of the assessment). It seems odd that ASCC would draft its articles of incorporation in such a way that gave it power to "collect" assessments from all stockholders unless it also intended to have power to "levy" assessments against those stock-

holders. The Peipers' interpretation of the articles of incorporation would create a broad class of persons from whom assessments could be collected, even though only those stockholders who actually requested and received water could have assessments levied against them. It seems more plausible that ASCC intended to give itself power to levy and collect assessments from all ASCC stockholders.

whether those stockholders request ASCC water.

The Peipers argue that I.C. 42–2201 allows a Carey Act operating company to levy and collect assessments based either on "the number of shares owned" or "the amount of water used." Peipers contend that the "benefits derived" language used in the articles of incorporation indicates that ASCC's founders intended to calculate assessments according to the latter method. A close reading of I.C. § 42–2201 indicates that even where assessments are calculated according to "amount of water used," stockholders are still liable for a "fixed amount per share for annual operation and maintenance and a charge for a fixed minimum amount of water per share, whether used or not, plus an additional charge based on the estimated amount of water to be delivered over the minimum, as requested." I.C. § 42–2201(2).

We conclude that the SRBA court did not err in determining that "benefits derived" does not mean "water received," and that ASCC had authority to make assessments against the Peipers even though ASCC delivered no water to the Peiper property.

**4. The SRBA court did not err in holding that I.C. § 42–2201 was constitutional.**

The Peipers argue that I.C. § 42–2201 is unconstitutional because it violates their procedural and substantive due process rights secured by the Fourteenth Amendment to the United States Constitution and Article I, Section 13 of the Idaho Constitution. The Peipers argue that their procedural rights were violated because I.C. § 42–2201 does not provide an opportunity to challenge the assessments levied against them. The Peipers also assert that the statute violates substantive due process because it allows an operating company to require the payment of assessments where no benefit is conveyed. The Peipers also argue that under 42 U.S.C. § 1983 they are entitled to declaratory relief stating that they are not liable for maintenance assessments.

The SRBA court held that the Peipers failed to establish a civil rights claim under 42 U.S.C. § 1983 because ASCC did not operate under "color of state law," and I.C. § 42–2201 did not deprive the Peipers of their due process rights.

 The party challenging a statute on constitutional grounds "must overcome a strong presumption of validity." *State v. Avelar*, 129 Idaho 700, 703, 931 P.2d 1218, 1221 (1997); *see also Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 709, 791 P.2d 1285, 1288 (1990). Every reasonable presumption must be indulged in favor of the constitutionality of an enactment. *See School Dist. No. 25 v. State Tax Comm'n*, 101 Idaho 283, 290, 612 P.2d 126, 133 (1980). It is a well established rule that "a legislative act should be held to be constitutional until it is shown beyond a reasonable doubt that it is not so, and that a law should not be held to be void for repugnancy to the Constitution in a doubtful case." *Sanderson v. Salmon River Canal Co.*, 45 Idaho 244, 256, 263 P. 32, 35 (1927). An earlier enactment of I.C. § 42–2201 has been held constitutional when challenged on equal protection grounds. *See id.*

**a. I.C. § 42–2201 does not violate substantive due process.**

 Substantive due process is guaranteed by both the Idaho and United States Constitutions, and requires that "a statute bear a reasonable relationship to a permissible legislative objective." *In re McNeely*, 119 Idaho 182, 189, 804 P.2d 911, 918 (Ct. App.1991). When dealing with legislation involving social or economic interests, the Court assumes a deferential standard of review. *See id.* In this context, substantive due process means "that legislation which deprives a person of life, liberty, or property must have a rational basis—that is, the reason for the deprivation may not be so inadequate that it may be characterized as arbitrary." *Id.*

The Peipers cite *Kootenai County Property Ass'n. v. Kootenai County* in support of the proposition that substantive due process requires that a fee be "reasonably related to the benefit conveyed." 115 Idaho 676, 680, 769 P.2d 553, 557 (1989). The Peipers assert that there is no reasonable relationship between the assessment and the benefit they

receive because they "do not receive any benefit by virtue of the assessment." Appellant's Brief, pp. 30–31.

In *Kootenai County*, the Court upheld a county ordinance requiring the owners of all residential dwellings to pay a $54 waste disposal fee, even though not all property owners actually used the system. *See* 115 Idaho at 678, 769 P.2d at 555. In upholding the ordinance, this Court stated: "The association presents no evidence showing that a $54 charge is not reasonably related to the annual benefit which the dwellings derive from the solid waste system." *Id.* at 679, 769 P.2d at 556. The question in this case, therefore, is not whether the assessment is reasonably related to the individual benefit which the Peipers actually receive, but rather whether the assessment is reasonably related to the overall benefit provided by ASCC as a whole. The SRBA court held that "the common interest created in a viable delivery system and the costs borne by ASCC of maintaining a canal system serve as a rational basis for the assessment. The reason for the assessment is certainly not so inadequate that it can be characterized as arbitrary."

b. **I.C. § 42–2201 does not violate procedural due process.**

Procedural due process requires that "there must be some process to ensure that the individual is not arbitrarily deprived of his rights in violation of the state or federal constitutions. This requirement is met when the defendant is provided with notice and an opportunity to be heard." *State v. Rhoades*, 121 Idaho 63, 72, 822 P.2d 960, 969 (1991) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865, 872 (1950); *Armstrong v. Manzo*, 380 U.S. 545, 550, 85 S.Ct. 1187, 1190, 14 L.Ed.2d 62, 65 (1965)). The opportunity to be heard must occur "at a meaningful time and in a meaningful manner" in order to satisfy the due process requirement. *Castaneda v. Brighton Corp.*, 130 Idaho 923, 927, 950 P.2d 1262, 1266 (1998) (quoting *Sweitzer v. Dean*, 118 Idaho 568, 573, 798 P.2d 27, 32 (1990)). Due process "is not a concept to be applied rigidly in every matter. Rather, it 'is a flexible

concept calling for such procedural protections as are warranted by the particular situation.'" *City of Boise v. Industrial Comm'n*, 129 Idaho 906, 910, 935 P.2d 169, 173 (1997) (quoting *In re Wilson*, 128 Idaho 161, 167, 911 P.2d 754, 760 (1996)).

The collection of ASCC assessments is enforced by the filing of a lien against the property of the delinquent shareholder. Section 42–2207 of the Idaho Code provides for the foreclosure of an assessment lien and states that the foreclosure proceedings shall commence "in the way of a civil action," in which "the provisions of the Idaho laws relating to civil actions, new trials, and appeals, are applicable to and constitute the rules of practice in proceedings under this chapter." In actions foreclosing assessment liens, delinquent landowners are therefore entitled to all of the procedural safeguards provided by the civil court system.

The Peipers maintain that while I.C. § 42–2201 requires that assessments be "equally and ratably levied," the statute makes no provision for stockholders to be heard and to contest the amount assessed against them. Presumably, the exact amount assessed against a shareholder could be raised during the foreclosure proceedings. *Cf. Columbus Land, Loan & Bldg. Ass'n v. Wolken*, 146 Neb. 684, 21 N.W.2d 418, 424 (1946) (stating that in a real estate foreclosure action, "the execution of the contract, the breach thereof, the identity of the real estate described therein, and *the amount remaining due* thereon are material and necessary issues to be determined by the decree." (emphasis added)).

Since the foreclosure proceeding would provide a meaningful opportunity to be heard and contest the amount due, I.C. § 42–2201 does not violate procedural due process. The Peipers have not overcome the strong presumption of validity afforded a duly passed statute. Therefore, we hold that the SRBA court did not err in its determination of this issue.

c. **The Peipers failed to establish a 42 U.S.C. § 1983 claim.**

The Peipers' counterclaim states that ASCC's assessment against their prop-

**92**

erty violated 42 U.S.C. § 1983[2] because it seeks "under the color of law, to deprive defendants of property without due process of law." To establish violation of Section 1983, a plaintiff must show a violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254, 101 L.Ed.2d 40, 48 (1988).

The Peipers assert that irrigation districts act under color of state law, citing *Dufur v. Nampa & Meridian Irr. Dist.,* 128 Idaho 319, 912 P.2d 687 (Ct.App.1996).[3] Peipers argue that a Carey Act operating company, like an irrigation district, is a "creature[ ] of the state and the subject of substantial assistance on operating procedures, enforcement of maintenance liens, tax benefits, and the like." The Peipers further argue that the inability of Carey Act operating company stockholders to exercise similar rights is violative of both procedural and substantive due process. This argument is unpersuasive. While Carey Act operating companies are similar to irrigation districts in some respects, they are materially different in their organization and regulation. Section 6–902(2) of the Idaho Code classifies irrigation districts as political subdivisions of the state, which are inherently state actors. The irrigation district's status as a state actor was so obvious that the issue of whether the irrigation district operated under color of state law was not even discussed in the *Dufur* decision. Operating companies like ASCC, however, are privately owned corporations, and as such act under color of state law only where there is significant state involvement

in the action. *See Howerton v. Gabica,* 708 F.2d 380, 382 (9th Cir.1983). When determining whether a private party acts under color of state law, "the circumstances surrounding the private eviction must be examined in their totality." *Id.* at 384. In *Howerton,* the Court found that a private landlord acted under color of state law when police officers actively participated in the illegal eviction of tenants. *Id.* at 385. There was no such state involvement in ASCC's assessment or foreclosure against Peipers' property.

Neither does the receipt of governmental benefits necessarily make ASCC a "creature of the state." *See Watkins v. Mercy Medical Center,* 364 F.Supp. 799, 803 (D.Idaho 1973) (holding that the fact that a hospital received tax exempt status from state, was licensed by state and applied for and received state and federal monies under Medicare and Medicaid programs would not support finding that hospital was clothed with state controls so as to be acting under color of state law), *aff'd,* 520 F.2d 894 (9th Cir.1975).

In order to find that ASCC, a private corporation, acted "under color of state law," the Court must determine that there was some state action that deprived the Peipers of a constitutional right. *See Lugar v. Edmondson Oil,* 457 U.S. 922, 923–24, 102 S.Ct. 2744, 2746–47, 73 L.Ed.2d 482, 486–87 (1982). Courts have set forth two theories for considering whether a private party's conduct qualifies as state action: the nexus theory and the public function theory. *See Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 350–53, 95 S.Ct. 449, 453–55, 42 L.Ed.2d 477, 483–85 (1974). The Peipers

---

**2.** "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983 (1994).

**3.** In *Dufur,* landowners within an irrigation district failed to pay assessments for several years. The irrigation district eventually purchased the

Dufur property at a tax deed auction. The Dufurs sued, claiming that the statutory procedures used to collect the assessments failed to provide adequate notice and a meaningful opportunity to be heard. The Court of Appeals upheld the district court's determination that the tax deed procedure was unconstitutional, but also noted that the assessments themselves were constitutional. The property was restored to the Dufurs only *after the assessments had been repaid,* even though the Dufurs *never received water* from the irrigation district. *See Dufur,* 128 Idaho at 322, 326, 912 P.2d at 690, 694.

have failed to show state action under either of these theories.

■ Under the nexus theory, state action exists where "there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Id.* at 351, 95 S.Ct. at 453, 42 L.Ed.2d at 484. The passage of I.C. § 42–2201 is the only connection between the ASCC assessments and the state. The United States Supreme Court had held that where a state statutorily permits certain private conduct, the authorized conduct will not necessarily rise to the level of state action. *See Flagg Bros. Inc. v. Brooks,* 436 U.S. 149, 165, 98 S.Ct. 1729, 1738, 56 L.Ed.2d 185, 199 (1978). In *Flagg Bros.,* the United States Supreme Court noted that the state of New York had not "compelled" the conduct complained of, but "merely announced the circumstances" under which the conduct would be permitted. *Id.* at 166, 98 S.Ct. at 1738, 56 L.Ed.2d at 199.

■ Under the public function theory, state action exists where the powers exercised by the private entity are "traditionally reserved to the state." *Jackson,* 419 U.S. at 352, 95 S.Ct. at 454, 42 L.Ed.2d at 485. The definition of "public function" has been narrowly drawn by the courts: a public function "is one that is usually reserved for the state—eminent domain, elections, parks, and the like." *Roberts v. Cameron–Brown Co.,* 556 F.2d 356, 358 (5th Cir.1977).

The Peipers have failed to show that ASCC acts under color of state law. Even if ASCC could be deemed a state actor, I.C. § 42–2201 does not violate principles of substantive and procedural due process, as explained above. The Peipers have failed to establish a 42 U.S.C. § 1983 claim. Therefore, the SRBA court did not err in its determination of this issue.

**5. The lower courts did not err in failing to dismiss the 1984 and 1985 claims for failure to prosecute.**

■ The decision to dismiss for failure to prosecute under Idaho Rule of Civil Procedure 41(b) is discretionary, and will not be overturned absent a showing of an abuse of that discretion. *See Gerstner v. Washington Water Power Co.,* 122 Idaho 673, 677, 837 P.2d 799, 803 (1992).

The district court declined to grant Peipers' Rule 41(b) motion to dismiss for failure to prosecute because no actual prejudice to the Peipers had been demonstrated. The Peipers contend that prejudice may be presumed to exist when there is an unexcused and unreasonable delay. *See Nagel v. Wagers,* 111 Idaho 822, 824, 727 P.2d 1250, 1252 (Ct.App.1986). In *Nagel,* the Court of Appeals upheld the dismissal of a personal injury action in which no significant activity had taken place for approximately nineteen months. The Court of Appeals held that a showing of actual prejudice was unnecessary because "prejudice may be presumed to flow from an unexcused and unreasonable delay." *Nagel,* 111 Idaho at 824, 727 P.2d at 1252 (quoting *Rudy–Mai Farms v. Peterson,* 109 Idaho 116, 118, 705 P.2d 1071, 1073 (Ct.App. 1985)).

This Court, however, has "explicitly disavowed" cases which allow Rule 41(b) dismissals based on presumed prejudice. *Gerstner,* 122 Idaho at 677, 837 P.2d at 803. In *Gerstner,* as in the present case, there was very little activity in a civil case for almost five years. In upholding the district court's denial of a motion to dismiss under Rule 41(b), the Court stated:

> Prejudice is an essential factor in the three-part deliberation process; it must exist regardless of the length of the delay and the rationale for the delay. Prejudice must consist of more than general concerns about the passage of time and its effect on the memories of witnesses and the ability to prepare a case. There must be actual, demonstrated prejudice to the moving party.

*Id.* The Peipers have made no showing of prejudice caused by the delay in this case, except for the "general concerns about the passage of time" held to be inadequate in *Gerstner.*[4] Consequently, we conclude that

─────────

4. The only fact that arguably suggests the Peipers have suffered prejudice is the accumulation of

the lower courts did not err in failing to grant the Peipers' Rule 41(b) motion to dismiss.

**6. The rulings in favor of ASCC on its complaints were not defective from a procedural standpoint.**

The Peipers argue that the judgment entered against them was procedurally defective. The consolidated cases were transferred to the SRBA court "for the purpose of determination and disposition of all matters, including trial." The SRBA court ruled on the issues raised in support of the Peipers' counterclaim or as affirmative defenses. The order granting summary judgment did not expressly rule on the claims stated in the complaints, however. The SRBA court determined that it had entered judgment "on all issues over which [it had] exclusive jurisdiction," and transferred venue back to the Seventh District court "for entry of any decree necessary to facilitate foreclosure" and "for such orders as are deemed appropriate . . . for the ultimate resolution of the matter."

The district court, while noting that the change of venue arguably should have been approved through the Supreme Court, entered a decree of foreclosure against the Peipers. The district court held that the unique and limited nature of the SRBA court's jurisdiction justified the transfer of venue. The change of venue also facilitated the foreclosure proceedings, which would be conducted by the Bingham County Sheriff.

Interdistrict transfers of cases are normally subject to the approval of the Supreme Court. While the SRBA court transferred the case back to the Seventh District without following this procedure, it makes little difference in this case. The SRBA court had decided all of the issues in favor of ASCC. In the interest of judicial economy, there was nothing improper in the transfer of venue.

The Peipers argue that the transfer of venue was improper because "neither court considered the actual merits of ASCC's complaints." This argument is unpersuasive. The complaints allege only that the Peipers have failed to pay their irrigation assessments and pray for foreclosure of the liens placed on their property. While addressing the Peipers' counterclaim and affirmative defenses, the courts below discussed extensively whether the Peipers were liable for the assessments. The Peipers have not suggested that the transfer was prejudicial or unfair in any way; thus there is little reason to invalidate the foreclosure of the assessment liens.

Therefore, we find that the foreclosure proceedings were not procedurally defective.

**B. The District Court Did Not Err In Determining That ASCC Is Not Entitled To Attorney Fees Under I.C. § 12–120(1).**

On cross appeal, ASCC argues it is entitled to attorney fees under Section 12–120(1) of the Idaho Code. Section 12–120(1) states:

> [I]n any action where the amount pleaded is twenty-five thousand dollars ($25,000) or less, there shall be taxed and allowed to the prevailing party, as part of the costs of the action, a reasonable amount to be fixed by the court as attorney fees. For the plaintiff to be awarded attorney fees, for the prosecution of the action, written demand for the payment of such claim must have been made on the defendant not less than ten (10) days before the commencement of the action.

The SRBA court declined to award attorney fees because ASCC did not allege in its pleadings that it sought to recover less than the $25,000 limit set by I.C. § 12–120(1). ASCC contends that even though the aggregate amount sought from the multiple defendants exceeded $25,000, the amount sought from the Peipers individually was within the statutory limit. ASCC asserts that it should be awarded attorney fees because the pleadings alleged that the Peipers owed an amount less than $25,000 and that ASCC would seek attorney fees.

Section 12–120(1) has been narrowly construed. In *Pancoast v. Indian Cove Irrigation District*, this Court held "the statute does not authorize a trial court to award

pre-judgment interest, which would occur in al- most any case.

attorney fees unless the amount 'pleaded' is $25,000 or less." 121 Idaho 984, 985, 829 P.2d 1333, 1334 (1992). The Court also held that other statutes "demonstrate that the legislature understands the meaning of the terms 'pleaded' or 'plead' in the procedural sense." *Id.* (citations omitted). Since *Pancoast,* the Court has interpreted the statute very literally. In *Cox v. Mueller,* 125 Idaho 734, 874 P.2d 545 (1994), the plaintiff asked for $3,000 in his demand letter and counsel for plaintiff requested $25,000 in damages during closing argument. This Court noted that "[w]riting a demand letter, answering a defendant's interrogatories, and other methods of notifying a defendant that a . . . plaintiff upon prevailing will seek mandatory attorney fees under I.C. § 12–120(1) are an inadequate substitute for a proper pleading." *Id.* at 737, 874 P.2d at 548. The Court also stated:

> The obvious purpose of I.C. § 12–120(1) is to discourage litigation, since the statute requires the defendant to be notified of the plaintiff's claim against defendant for at least ten days before a complaint can even be filed. In the event that a complaint is filed, the statute again encourages early settlement by requiring that the pleadings warn the parties that *this statute* will be invoked for mandatory attorney fees.

*Id.* (emphasis added). Following this reasoning, this Court has also held that an award of attorney fees under I.C. § 12–120(1) is appropriate when the complaint prays for less than $25,000, even if the complaint is later amended to include a request for punitive damages. *See Downey Chiropractic Clinic v. Nampa Restaurant Corp.,* 127 Idaho 283, 287, 900 P.2d 191, 195 (1995).

We must therefore examine the pleadings in this case to determine whether ASCC warned the Peipers that I.C. § 12–120(1) would be invoked for mandatory attorney fees. The complaints filed by ASCC name numerous defendants, and allege that each defendant owes a specified amount of delinquent assessments. The aggregate amount sought from all defendants in the action exceeds $25,000. The complaints allege that the Peipers owe ASCC approximately $15,000 in assessments.

The complaints employ a variety of language indicating that ASCC will seek to recover costs and fees. In the first complaint, ASCC states that it wishes to recover the delinquent assessments plus "costs of suit." The second amended complaint in Case No. 90–13836 alleges that ASCC "is entitled to recover reasonable attorney fees in the approximate sum of one-third (⅓) the total amount sought, plus costs incurred . . . as provided by Section 12–120, Idaho Code." In the amended complaint for Case No. 93–14195, ASCC used similar language in the portion of the complaint dealing with the Peipers. That same complaint also states, without naming a specific defendant, that "as to all counts," ASCC prayed "for an award of reasonable attorney fees in the amount sought herein, plus costs incurred in the prosecution of the action." Only in Case No. 96–1395 does ASCC clearly indicate that it seeks to recover from the Peipers an amount less than $25,000, plus attorney fees under § 12–120(1).

This Court has placed "a premium" on examining the pleadings when evaluating the applicability of I.C. § 12–120(1). *Downey,* 127 Idaho at 287, 900 P.2d at 195. Considering the narrow construction given the statute, we conclude that ASCC is entitled to attorney fees only in Case No. CV–96–1395.

### V.

### ATTORNEY FEES AND COSTS ON APPEAL

ASCC has requested attorney fees on appeal pursuant to I.A.R. 41 and I.C. § 12–121. An award of attorney's fees under I.C. § 12–121 is proper " 'only where the Court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation.' " *Lanham v. Idaho Power Co.,* 130 Idaho 486, 500, 943 P.2d 912, 926 (1997) (quoting *Thompson v. Pike,* 125 Idaho 897, 901, 876 P.2d 595, 599 (1994)). Because we are not so persuaded we do not award attorney fees on appeal. ASCC did not request attorney fees on cross-appeal.

Since ASCC is the prevailing party on appeal but only prevailed partially on cross-

appeal, ASCC is not entitled to costs on appeal.

## VI.

## CONCLUSION

We hold that the lower courts did not err in granting summary judgment to ASCC. With respect to ASCC's request for attorney fees we hold that ASCC is not entitled to attorney fees under § 12–120(1), except in Case No. CV–96–1395. No attorney fees or costs are awarded on appeal.

Chief Justice TROUT, Justices SCHROEDER, WALTERS and KIDWELL, concur.