# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 45421

JAMES ALLEN FLOYD, )
)
      Petitioner-Appellant, )
) **Boise, November 2018**
v. ) **Term**
)
BOARD OF ADA COUNTY ) **Filed: January 29, 2019**
COMMISSIONERS, )
) **Karel A. Lehrman, Clerk**
      Respondent. )
_____ )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Richard D. Greenwood, District Judge.

The district court's judgment is <u>affirmed</u>.

James A. Floyd, Boise, appellant pro se.

Jan M. Bennetts, Ada County Prosecuting Attorney, Boise, for respondent.

_____

SUBMITTED ON THE BRIEFS

BRODY, Justice.

This appeal arises from the Ada County Board of Commissioners' decision to direct issuance of a tax deed. The property owner, James Allen Floyd, was incarcerated in the county jail throughout the proceedings, and alleges that he never received official notice of the pending tax deed until a month before his hearing. Despite having his jail address on file, the County Treasurer delivered statutory notices to Floyd's vacant home. However, she also sent Floyd letters at the jail apprising him of the tax deed proceedings and delinquent taxes owed. The Board of Commissioners determined that Floyd received sufficient due process, and directed the tax deed to issue. The district court affirmed, holding that Floyd had actual notice despite the Treasurer's failure to comply with statutory notice requirements. We now affirm the district court's determination because Floyd had actual notice of the pending tax deed.

1

# I.     FACTUAL AND PROCEDURAL BACKGROUND

James Allen Floyd owned a home located at 9180 W. Yaryan Drive in Boise, Idaho. The taxes on the home were unpaid for 2011, 2012, 2013, and 2014.

On August 15, 2014, Floyd was arrested on a criminal matter and remained incarcerated in the Ada County jail for several months. On October 9, 2014, the Treasurer sent a reminder letter of the 2011 taxes due to Floyd at the jail. She also added Floyd's jail address to the county records, so that future correspondence would be sent there. Floyd wrote back, "I do not dispute the taxes owed and I'm fully willing to pay them." On October 16 and 21, the Treasurer sent Floyd additional letters to his jail address explaining that his hardship application had been denied, and reminding him of the delinquent amount owed, and the need for full payment by March 19, 2015, to halt the tax deed process. She also sent a tax history printout and a request for Floyd to contact her on his release from jail. He then began sending out letters to various churches and charities in the hopes one would pay his taxes anonymously.

Over the next several weeks, the Treasurer mailed official notices of the pending tax deed to the Yaryan Drive address while Floyd remained incarcerated at the county jail. As the undeliverable mail was returned to the Treasurer's office, the clerk used a stamp—which said "paid" and had the date—to show when the returned mail arrived at the Treasurer's office. Floyd continued his correspondence with the Treasurer. On January 10, 2015, Floyd informed the Treasurer that his tenants would pay the taxes by the March deadline. Alternatively, he proposed that Ada County forgive the delinquent taxes in exchange for his dismissal of a lawsuit against the Ada County jail. In that same letter, Floyd also reminded the Treasurer that he had yet to receive notice of the pending tax deed by registered mail, as required by statute.

On February 10, 2015, a sheriff's deputy hand-delivered three envelopes to Floyd at the jail, with two containing notices of the pending tax deed, each dated from October 27, 2014. On the backs of the notices were postal tags indicating they were undeliverable and returned to the County Treasurer's office. In addition, the October notices were stamped "PAID" with the date "November 20, 2014" on the upper right hand corner. Floyd claims these were the first official notices of the pending tax deed to reach him at the county jail.

Floyd immediately contested the tax deed, arguing that because the notices had a "paid" stamp on them, the taxes must have been paid, whether by the churches he wrote to or from

another anonymous payor. Floyd wrote that he was confused over why he would have to pay $2,909.57 by March 19.

Ten days after the hand-delivery, Floyd received another letter from the deputy treasurer stating: "The payment that was made last year on 11/20/14, was for payment of delinquent 2010 Taxes." However, as Floyd noted in his response letter, the tax history shows that the 2010 taxes were paid, not delinquent. The Treasurer later wrote to Floyd to explain that the last tax payment came in May 2014 and was applied to the 2011 delinquent taxes. The mistake in the deputy treasurer's recent letter, she explained, was simply an office oversight. She also explained that no taxes were paid on November 20, 2014; the notices were simply stamped that way when they were returned by the postal service.

The Ada County Board of Commissioners held the tax deed hearing on March 19, 2015. Floyd requested to attend or have counsel appointed, but neither the Board nor the sheriff's department arranged to transport Floyd to the hearing. Floyd submitted a seven page letter and several exhibits to the Board, in addition to a grievance for being denied transport to the hearing. The Board then gave the documents to the Treasurer and prosecuting attorney. The sheriff's deputy also informed Floyd he could arrange to participate in the hearing over the phone.

At the hearing, the prosecuting attorney introduced Floyd's letter and exhibits to the Board, stating: "Pursuant to Idaho Code 63-1006, I recommend that you consider the correspondence letters and exhibits from Mr. Floyd as an appearance or answer in this matter." The Treasurer then presented evidence to the Board, including the tax history records, notice mailings, and an explanation that the "paid" stamp on the back of the returned envelopes was used as a date stamp and that the taxes had not actually been paid.

On March 24, 2015, the Board issued its final decision, ultimately determining that Floyd received proper notice pursuant to Idaho Code section 63-1005, and that the 2011 delinquent taxes on the Yaryan property remained unpaid. The Board then directed the county tax collector to issue the tax deed on the Yaryan property in favor of Ada County. A month later, on April 24, 2015, Floyd submitted a Petition for Judicial Review and Initial Complaint to the Board. Floyd also filed an objection to the Agency Record, claiming several deficiencies and errors, which prompted the Board to file a supplemental record. The supplemental record added the Board's meeting agendas, the Treasurer's Affidavit of Compliance, Floyd's letter asking about the office

3

error over the 2010 taxes, and a letter from the Treasurer explaining the earlier office error and Floyd's still unpaid taxes for 2011–2014.

On August 26, 2015 Floyd filed his petition and complaint with the district court. The Board then filed a motion to dismiss Floyd's Petition for Judicial Review and Initial Complaint, which the district court granted and denied in part. It dismissed Floyd's complaint without prejudice, but permitted Floyd's Petition for Judicial Review to move forward. The parties appeared and argued before the district court on July 17, 2017, with Floyd representing himself. On August 31, 2017, the district court issued a decision affirming the Board's determinations. Floyd timely appealed.

## II.    STANDARD OF REVIEW

On reviewing a County Board of Commissioners' decision to issue a tax deed, the district court must confine its review to the county record and can only reverse or modify the Board's decision if substantial rights were prejudiced. I.C. § 63–1006(4). Substantial prejudice occurs where the Board's decisions or conclusions were: "(a) Made upon unlawful procedure; (b) Clearly erroneous in view of reliable, probative and substantial evidence on the whole record; or (c) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." I.C. § 63–1006(4). On appeal, this Court reviews the district court's decision to determine whether the district court correctly decided the issues presented. *Chavez v. Canyon Cnty., State, ex rel. its Duly Elected Bd. of Cnty. Comm'rs*, 152 Idaho 297, 300–01, 271 P.3d 695, 698–99 (2012).

This Court exercises free review over due process issues because they are questions of law. *Neighbors for a Healthy Gold Fork v. Valley Cnty.*, 145 Idaho 121, 127, 176 P.3d 126, 132 (2007). This Court also exercises free review in determining whether the Board violated a statutory provision, which is a matter of law. *Salladay v. Bowen*, 161 Idaho 563, 565, 388 P.3d 577, 579 (2017).

## III.    ANALYSIS

While Floyd raises nine issues in his pro se appeal, the crux of his case concerns whether he received adequate procedural due process before being deprived of his property. In addition to those due process arguments, he contends that the paid stamp on the back of the returned envelopes proves he paid his taxes and the district court erred in determining the record was complete. Finally, he adds that the Board's determinations were clearly erroneous, arbitrary and

4

capricious, and an abuse of discretion. We hold that Floyd received adequate procedural due process and the district court correctly decided the issues presented. We affirm the judgment of the district court.

### A. Floyd received adequate procedural due process because he had actual notice of the pending tax deed, and his submitted evidence established a meaningful opportunity to be heard.

"Procedural due process requires that there must be some process to ensure that the individual is not arbitrarily deprived of his rights in violation of the state or federal constitutions." *Aberdeen-Springfield Canal Co. v. Peiper*, 133 Idaho 82, 91, 982 P.2d 917, 926 (1999) (citation omitted). This requires both notice and the opportunity to be heard. *Id.* Each must occur at a meaningful time and in a meaningful manner, though the exact procedural safeguards can vary depending on the situation. *Id.*; *Meyers v. Hansen,* 148 Idaho 283, 292, 221 P.3d 81, 90 (2009). Floyd received adequate due process because he had: (1) actual notice of the pending issuance of the tax deed and the hearing date; and (2) a meaningful opportunity to be heard by presenting evidence at the hearing.

### 1. Floyd had timely actual notice that issuance of a tax deed was pending.

Idaho Code section 63-1005 governs the notice requirements the tax collector must follow before a tax deed can be issued. While the district court found Floyd did not receive the formal notice contemplated by section 63-1005(4) within the required time frame, it ultimately concluded that Floyd had actual notice that issuance of a tax deed was pending at least five months prior to the hearing. The district court correctly decided this issue.

Section 63-1005(6) functions as a safe harbor in situations where the tax collector does not comply with the notice requirements, but the property owner still has actual notice that issuance of a tax deed is pending. It states: "If a record owner or owners or a party in interest shall have actual notice of the notice of pending issue of tax deed or that issuance of a tax deed is pending, it shall be deemed sufficient notice under this section." Actual notice occurs where the party is informed of the pending proceeding. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 318 (1950); *Giacobbi v. Hall*, 109 Idaho 293, 296–97, 707 P.2d 404, 407–08 (1985).

Between October 9 and 21 of 2014, Floyd exchanged correspondence with the Treasurer who explained Floyd's denied tax hardship, the delinquency amount owed, the need for full payment by March 19, 2015, to halt the tax deed process, and a tax history printout. Floyd even wrote back: "I do not dispute the taxes owed and I'm fully willing to pay them." Floyd then

5

spent the months between the October letter and February notices trying to find someone to pay the taxes on his behalf. First he approached several churches, asking them to pay his taxes anonymously, and then in January he arranged for his tenants living at the Yaryan house to pay the overdue taxes. Finally, he attempted to bargain with Ada County: proposing a dropped law suit in exchange for forgiven taxes. The only indication Floyd had the taxes were paid—indeed, the only evidence he can present to that effect—is the "paid" date stamp on the October notices the deputy hand delivered on February 10, 2015. Only then did he argue that the tax deed should not issue.

These facts demonstrate Floyd's knowledge of the pending issuance of the tax deed, the amount due, the deadline for payment, and ample time to voice any objections or present evidence of payment. As the property owner, Floyd was aware of the approaching tax deed proceedings, as well as the means to secure his home, despite the county's non-compliance with each statutory notice requirement. Although the Treasurer's letter was not formal notice pursuant to Idaho Code section 63-1005(a), her October letters apprised Floyd of the proceedings well enough to establish notice of both the delinquent taxes and the need for full payment to halt the tax deed process. Accordingly, Floyd had actual notice of the pending issue of tax deed, which was sufficient notice under Idaho Code section 63-1005(6).

### 2. Floyd's physical presence was not required at the hearing.

Floyd contends he had a constitutional right—under both the U.S. and Idaho constitutions—to physically appear before the Board so he could present, examine, and refute evidence at the hearing. The district court disagreed, explaining that while a hearing must occur before there is a deprivation of property, Floyd was afforded a full opportunity to appear through his letters and presentation of evidence. We agree.

"The fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). Under Idaho Code section 63-1006(2) a record owner can present evidence and witnesses to the county commissioners at the hearing concerning the issuance of the tax deed.

Generally, the right of due process gives a petitioner the opportunity to make an oral presentation to the court, as well as confront and cross examine adverse witnesses. *Goldberg v. Kelly*, 397 U.S. 254, 268–69 (1970). For example, in *Goldberg v. Kelly*, New York City's procedures prohibited welfare recipients from attending hearings that determined their continued

6

eligibility. *Id.* at 268–69. Instead of making his case verbally, a recipient had to submit a written statement explaining why his grant should continue. *Id.* at 258. The U.S. Supreme Court determined that written submissions were unsatisfactory for due process where witness credibility and oral presentation are critical to the decision making process. *Id.* at 268–69.

However, the Supreme Court has also recognized that writings are acceptable substitutes where there is less value in a full evidentiary hearing, and the writings effectively communicate the arguments and evidence to the decision maker. *Mathews v. Eldridge*, 424 U.S. 319, 344–45, n.28 (1976). For example, in *Mathews v. Eldridge*, the discontinuation of disability benefits turned primarily on standard, unbiased medical reports following physical examinations. *Id.* at 344. Likewise, the agency questionnaires and reports filled out by the disability recipient could communicate the evidence more effectively than a recipient's own written documents or witnesses. *Id.* at 345. Thus, the Court determined, the "potential value of an evidentiary hearing, or even oral presentation to the decisionmaker, is substantially less in this context than in *Goldberg*." *Id.* at 344–45.

Written submissions may substitute oral presentation as long as the deprived party has the opportunity to be heard at a meaningful time and in a meaningful way. *See id.* at 333, 343–47, n.28. After all, due process is flexible; it "calls for such procedural protections as the particular situation demands." *Id.* at 334 (citation omitted). In determining whether such procedures are constitutionally sufficient, the court examines three factors: the private interests affected; the risk of erroneously depriving that private interest through the procedures used; and the Government's interests, including the administrative and fiscal burdens of additional or substitute procedures. *Id.* at 335.

We have not previously addressed the right of an incarcerated prisoner to attend his tax deed hearing. However, Idaho's courts have recognized the adequacy of written evidence and arguments as a substitute for oral presentation in due process hearings. For instance, *In Interest of Baby Doe*, the Idaho Court of Appeals held that the incarcerated father's presence at the hearing to terminate parental rights was not required because he could still 'appear' through counsel and deposition testimony. 130 Idaho 47, 52, 936 P.2d 690, 695 (Ct. App. 1997). Likewise, in *Neighbors for a Healthy Gold Fork v. Valley County*, this Court held that the neighbors' presentations of written evidence and objections for an administrative board's consideration over a proposed residential development were an adequate opportunity to be heard.

7

145 Idaho 121, 127–28, 176 P.3d 126, 132–33 (2007). These cases demonstrate the *Matthews v. Eldridge* principle of flexible due process—the plaintiff's due process rights were met in each case because he could present evidence through writing or legal representation, even if he could not physically appear at the hearing. *See Mathews*, 424 U.S. 319, 333, 343–47, n.28. The query then is whether Floyd's letters established an opportunity to be heard at a meaningful time and in a meaningful way before the Board deprived him of his property right.

Floyd undoubtedly has a vital property right at stake: his home will be saved or lost because of the evidence presented at the hearing. However, while Floyd's incarceration kept him from physically attending the hearing, the county provided multiple avenues for Floyd to be heard: the county allowed his written submissions, the prosecutor submitted the evidence on Floyd's behalf, the deputy informed Floyd he could participate by phone (which Floyd did not arrange), and Floyd could have requested a friend or legal representative to attend on his behalf. At the hearing, Floyd submitted a letter and several exhibits to the Board—which were submitted by the Prosecutor—but he did not arrange to participate by phone or representation. Thus, unlike in *Goldberg*, the Board here gave Floyd various meaningful opportunities to be heard even if it did not provide transportation to the hearing itself.

In addition, considering that the main queries before the Board were simply to determine whether Floyd paid his taxes or received the mailed notices, an oral presentation was not critical to the decision making process. Instead, the Board relied on the exhibits and documents from both Floyd and the Treasurer, each of whom presented evidence on whether notice was mailed and the delinquent taxes had been paid. Floyd's main pieces of evidence consisted of an empty envelope from the Society of St. Vincent de Paul, the use of the "paid" stamp on the October notices he received on February 10, 2015, and a letter from the deputy treasurer explaining that his November 2014 tax payment was applied to his 2010 taxes (this letter was later explained to be an office error). The Treasurer presented the tax records, evidence of mailings, and other documents to show that the taxes remained unpaid. These documents were enough to inform the Board on whether the taxes were paid and whether Floyd received notice of the pending tax deed proceedings.

Ultimately, Floyd's writings were acceptable substitutes for attending the hearing because his writings effectively communicated his arguments and evidence to the Board, and he could have "appeared" through a representative. Like in *Mathews v. Eldridge*, the potential value

of an evidentiary hearing, or even oral presentation to the Board, was substantially less in this context than in *Goldberg*. The documents provided by both parties could more effectively communicate whether Floyd paid his taxes and received notice than any witness examination or oral presentation.

### B. The paid stamp was not evidence of paid taxes.

Floyd argues that the paid stamp on the undelivered notices was actually a receipt indicating payment of his taxes, as required by Idaho Code section 63-1002(3). At the district court, he even accused the Treasurer of a conspiracy to hide payment of his taxes as a way to pocket the payment. The district court noted that the paid stamp was a "troubling" office practice, but found it did not act as a receipt, especially since the Treasurer corrected the mistaken impression in her subsequent letter. We agree that the paid stamp did not evidence paid taxes.

Idaho Code section 63-1002(3) requires the tax collector to issue the taxpayer a receipt upon payment of delinquency, if requested. A receipt is "a written acknowledgement that something has been received." *Receipt*, BLACK'S LAW DICTIONARY (8th Ed. 2004).

There was no evidence that the stamp acted as a receipt of payment because Floyd knew the taxes were unpaid. While the notices arrived with a paid stamp, they came along with the additional notice of publication and a letter indicating that the tax deed process continued. Surely if Floyd thought someone had paid the taxes back in November 2014, he would not have tried to get his tenants to pay, or bargain for Ada County to forgive, the delinquency in exchange for the relinquishment of a tort claim. Furthermore, even if the February 10 delivery of the October notices was Floyd's first sign of an anonymous payment, the mistake was tempered by the additional documents and then corrected by the Treasurer's letter two weeks later. Thus, the stamp neither frustrated his purposes to pay the taxes, nor signaled to him that payment occurred when it clearly had not.

We do, however, agree with the district court's assessment that the "paid" stamp is a troubling practice. The stamp's presence appears to have even confused the Treasurer's office staff, which resulted in the deputy treasurer mistakenly informing Floyd of a "November 20" payment—the same date as the paid stamp on the returned October notices.

Nevertheless, the district court correctly determined that the "paid" stamp was not a legal impediment to the issuance of the tax deed here, and was—at best—only ambiguous evidence of payment.

**C. The district court correctly determined that the record was complete, and the lack of a certificate was a harmless error.**

Floyd argues that the record was incomplete on appeal because it did not contain an exhibit list pursuant to Idaho Rule of Civil Procedure 84(f)(1)(b)(v), which would have included the letters he sent to the hearing. Essentially, he argues that the record was deficient on appeal because of this missing certificate. The county argues that Floyd cannot raise this argument on appeal when he did not raise it at the district court, and that he experienced no prejudice from the error. While Floyd did not object using the words "deficient record" at the district court, he raised several arguments regarding the treasurer's and Board's error in not admitting his letters for consideration.

The administrative record must include "a certificate listing all exhibits identified at hearing," and "a table of contents." I.R.C.P. 84(f)(1)(b)(v–xii), unless otherwise prescribed by statute. However, Rule 61 of the Idaho Rules of Civil Procedure states: "At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."

The district court correctly determined that the record was complete. The letter and exhibits Floyd submitted to the Board were in the Agency Record, and additional documents were added in the supplemental agency record once Floyd made his first objection. In addition, the Board examined all the documents Floyd submitted with his letter when making its final decision, and added this evidence to their factual findings. Those exhibits are also listed in the Agency Record's Table of Contents, even though both the record and supplemental record lack a certificate listing exhibits from the hearing. While several documents were not included in the original agency record, their addition through the supplemental record corrected the error and presented a complete record to the district court on appeal.

Floyd's main contention on appeal is a violation of Rule 84 of the Idaho Rules of Civil Procedure because the record contains a table of contents but not a certificate listing all exhibits identified at a hearing. Yet Floyd fails to explain how this minor procedural violation prejudiced him or created unfair proceedings when his submitted documents were in the agency record before the Board and then the district court. His argument here consists simply of reminding the

10

court that everyone must adhere strictly to the rules. Pursuant to Rule 61 of the Idaho Rules of Civil Procedure, the error of the missing certificate was a defect, but it did not affect Floyd's substantive rights, nor did it impact the Board's impartial decision making process. Accordingly, the missing certificate was harmless error.

### D. The Board's decision to direct issuance of the tax deed was not clearly erroneous, arbitrary and capricious, or an abuse of discretion because it was based on substantial evidence.

Floyd's last argument states that the Board's conclusions were clearly erroneous, abuses of discretion, and arbitrary and capricious because they were not supported by the evidentiary record. We disagree.

Each standard of review, though similar, uses a slightly different means to ensure the fact finder reaches a reasonable conclusion. Clearly erroneous applies where factual findings are not supported by substantial and competent evidence. *Nw. Farm Credit Servs., FLCA v. Lake Cascade Airpark, LLC*, 156 Idaho 758, 763, 331 P.3d 500, 505 (2014). An abuse of discretion standard examines whether the district court acted within the boundaries of its discretionary decision and applicable legal standards, and reached a decision by exercising reason. *Wohrle v. Kootenai Cnty.*, 147 Idaho 267, 271, 207 P.3d 998, 1002 (2009). Whereas an arbitrary and capricious decision occurs where the decision was reached in an unreasonable manner or based on clearly erroneous findings. *See Pioneer Irr. Dist. v. City of Caldwell*, 153 Idaho 593, 595, 599, 288 P.3d 810, 812, 816 (2012).

Although the record is convoluted at times, the record by and large establishes that Floyd's taxes remained unpaid and that he was aware of the pending tax deed. Floyd did not present evidence that someone paid the taxes anonymously on his behalf. His basis for that argument stems from an empty envelope from the Society of St. Vincent—which Floyd admits contained only his returned letter—and the office error mix up with the paid stamp. As the district court noted, this "troubling practice" was poorly done but did not establish a conspiracy to hide Floyd's money. Moreover, the Board considered Floyd's submitted letters and exhibits, and discussed those facts in its final decision. Because the Board examined all the evidence before it and came to a reasonable conclusion, its determination to issue the tax deed was not clearly erroneous, arbitrary and capricious, or an abuse of discretion. The district court correctly decided this issue.

### E. The Board is not entitled to an award of attorney fees, but is awarded costs.

11

The Board argues it is entitled to attorney fees under Idaho Code section 12-121, which "allows the award of attorney fees in a civil action if the appeal merely invites the Court to second guess the findings of the lower court." *Bach v. Bagley*, 148 Idaho 784, 797, 229 P.3d 1146, 1159 (2010).

While Floyd's arguments proved unsuccessful, his appeal was not filed frivolously, unreasonably, or without foundation. Floyd's due process arguments raised several concerns of adequate notice and compliance with the Idaho Code. In addition, Floyd's appeal presented a new argument to address whether the Treasurer's October letters sufficiently established actual notice of the pending tax deed proceeding to satisfy Idaho Code section 63-1005(6). Therefore we decline to award attorney fees to the Board.

## IV.    CONCLUSION

We hereby affirm the district court's judgment, but decline to award attorney's fees. Costs on appeal are awarded to the Ada County Board of Commissioners.

Chief Justice BURDICK, Justices HORTON, BEVAN and STEGNER CONCUR.