148 P.3d 1247

Robert G. COWAN, Plaintiff–Appellant–Cross Respondent,

v.

BOARD OF COMMISSIONERS OF FREMONT COUNTY, Idaho and the Individual Commissioners Donald Trupp, as successor to Glen Davis, William Forbush and Gordon Smith, as successor to Richard Baker, Defendants–Respondents–Cross Appellants.

No. 30061.

Supreme Court of Idaho,
Idaho Falls, October 2006 Term.

Nov. 29, 2006.

Hopkins, Roden, Crockett, Hansen & Hoopes, Idaho Falls, for appellants. C. Timothy Hopkins argued.

Karl Harry Lewies, Fremont County Prosecuting Attorney, St. Anthony, for respondent. Karl Harry Lewies argued.

BURDICK, Justice.

Appellant Robert Cowan (Cowan) appeals from a district court decision affirming the Fremont County Board of Commissioners' (the Board) approval of the preliminary and final plats for the proposed Eagle's Nest Ranch subdivision (Eagle's Nest). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal involves several petitions for review, all filed by Cowan, which the district court consolidated. It concerns two applications filed by Dr. Dean Bawden (Bawden) to subdivide and develop home sites on a parcel located adjacent to Cowan's property and near Island Park Reservoir in Fremont County, Idaho.

Bawden purchased two separate parcels of land in 2000 either personally or through his family or business entities. The land owned by Bawden or his family or business is rectangular and consists of 147 acres. Bawden has retained the sixty-one acre parcel for residential and agricultural use. However, he proposed to develop the eighty-six acre parcel into residential lots with road access. Additionally, Bawden's son, Eric, owns a parcel northwest of the Eagle's Nest devel-

opment. This parcel was separated from Eagle's Nest pursuant to a Class I permit issued by the County.[1]

### A. The First Application

On April 24, 2000, Bawden filed his first application for a Class II permit with Fremont County, seeking to subdivide the eighty-six acre parcel of land into twenty-nine lots.[2] The Fremont County Planning and Zoning Commission (P & Z) considered Bawden's application and preliminary plat at a public hearing in June of that year. P & Z recommended approval of the plat to the Board and issued Bawden a permit. Cowan appealed this decision to the Board. In August 2000, the Board heard Cowan's appeal and later held a closed work session to consider the matter. This meeting, however, was incorrectly noticed as an executive session. Later that same month, the Board approved Bawden's application for a permit, but remanded the matter to P & Z to consider the issue of whether the proposed development site would eliminate historically existing access to public lands.

Later, in September 2000, Cowan filed two separate petitions for judicial review of the Board's decision and filed a lawsuit alleging that the Board violated Idaho's Open Meetings Act when it held the incorrectly noticed meeting to consider Bawden's application. On May 21, 2001 the district court determined that the Board had violated the Open Meetings Act.

In November 2000, P & Z held a public meeting to address the issue of whether the development would eliminate historically existing access to public lands. Bawden, at that meeting, declared his intention to leave open access to the public. P & Z then found the issue was moot. At that meeting P & Z also considered and recommended approval of Bawden's final plat for phases I and II of the development. Cowan appealed this decision to the Board; however, his appeal was postponed indefinitely and never heard be-

---

**1.** A Class I permit allows applicants to split lots. *See* Fremont County Development Code (FCDC) Ch. III(B)(1)(a).

**2.** A Class II permit is required for subdivisions under the FCDC. *See* FCDC Ch. III(B)(3)(a).

cause in May, 2001, Bawden decided to not pursue the first application any further.

Meanwhile, in January 2001, the Board held a second meeting and once again approved Bawden's preliminary plat.[3] After the Board issued its written findings of fact, conclusions of law and decision, Cowan filed a second petition for judicial review. In May 2001, the district court issued its decision in Cowan's first petition for judicial review, declaring that the Board's incorrect notice for its August 23, 2000, meeting voided its August 28, 2000 decision and ordered the Board to schedule a new hearing. In the midst of this, Bawden sent letters to the Board and Cowan withdrawing this application. Since then the Board has taken no action on the first application.

## B. The Second Application

On May 17, 2001, Bawden filed a new application and preliminary plat with Fremont County; this time he sought to subdivide and develop twenty residential lots. The following month P & Z held a hearing to consider Bawden's second application and plat and recommended that the application be approved. Once again, Cowan appealed P & Z's decision to the Board. Bawden then submitted his final plat to P & Z for review. On July 16, 2001, before the Board heard Cowan's appeal of the preliminary plat, P & Z considered and recommended Bawden's final plat to the Board for approval. Cowan then appealed that decision as well.

On July 30, 2001, the Board held a hearing on Cowan's appeal of the preliminary plat. Cowan's attorney was present at this meeting and submitted a written brief objecting to the notice the Board had provided for the meeting, indicating that the notice failed to include several items the FCDC requires of all notices. After a work session in August 2001, the Board approved Bawden's preliminary plat and issued a written decision on September 10, 2001. Cowan filed a petition for judicial review of this decision. On September 11, 2001, the Board held a hearing

and considered and approved Bawden's final plat conditioned on Bawden entering into a development agreement as the FCDC required. On October 9, 2001 the Board issued a written decision and on October 22, 2001 the Board and the developer executed a development agreement. Cowan once again filed a petition for review, and because all four of the petitions contained common questions of law and fact the district court consolidated the petitions.

On August 19, 2003, the district court issued its memorandum decision on Cowan's four petitions for judicial review. The district court determined that Cowan's arguments relating to the first application were moot. As to his arguments regarding the second application, it affirmed the Board's decision in part, but remanded to the Board for a determination of whether Bawden's application complied with the FCDC's provisions concerning state and federal wetlands protection. The district court also awarded Cowan attorney's fees because although the district court found that Cowan had not prevailed on the issues relating to the second application, he had prevailed "in forcing the County to follow the law and its own ordinance—something it should have done without Cowan's persistence." Cowan then filed a notice of appeal of the district court's decision and Fremont County filed a cross-appeal. However, on November 18, 2003, this Court suspended Cowan's appeal.

Meanwhile, on remand from the district court, the Board held a public hearing in January 2004, to determine whether Bawden's second application complied with the state and federal wetlands protection provisions adopted by the FCDC. After hearing testimony and taking evidence the Board took the matter under advisement pending briefing by the parties. On March 22, 2004, the Board issued written findings and conclusions and found that the proposed subdivision complied with the FCDC's wetlands protection provision. Cowan then filed his fifth petition for judicial review. On June 16,

---

3. It appears that the Board concedes this meeting was held in an effort to cure the defect in the prior notice. In their brief, the Respondents write: "A couple of months later, in January 2001, *recognizing that its August work meeting had likely violated the open meeting law,* the Board held a repeat work meeting...." (Emphasis added).

2005, the district court issued its memorandum decision on this petition for judicial review, affirming the Board's decision. Cowan then proceeded with the instant appeal.

## II. STANDARD OF REVIEW

 The Local Land Use Planning Act (LLUPA) allows an affected person to seek judicial review of an approval or denial of a land use application, as provided for in the Idaho Administrative Procedural Act (IDAPA). Idaho Code § 67–6521(1)(d); *Evans v. Teton County*, 139 Idaho 71, 74, 73 P.3d 84, 87 (2003). For purposes of judicial review of LLUPA decisions, a local agency making a land use decision, such as the Board of Commissioners, is treated as a government agency under IDAPA. *Urrutia v. Blaine County*, 134 Idaho 353, 357, 2 P.3d 738, 742 (2000).

> In a subsequent appeal from a district court's decision in which the district court was acting in its appellate capacity under the Administrative Procedure Act . . ., the Supreme Court reviews the agency record independently of the district court's decision. As to the weight of the evidence on questions of fact, this Court will not substitute its judgment for that of the zoning agency.
>
> The Court shall affirm the zoning agency's action unless the Court finds that the agency's findings, inferences, conclusions or decisions are: "(a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; and (e) arbitrary, capricious, or an abuse of discretion." The party attacking a zoning board's action must first illustrate that the board erred in a manner specified therein and must then show that a substantial right of the party has been prejudiced.

*Eacret v. Bonner County*, 139 Idaho 780, 784, 86 P.3d 494, 498 (2004) (internal citations omitted). Finally, planning and zoning decisions are entitled to a strong presumption of validity; this includes the board's application

and interpretation of their own zoning ordinances. *Sanders Orchard v. Gem County*, 137 Idaho 695, 698, 52 P.3d 840, 843 (2002).

## III. ANALYSIS

 As a preliminary matter, Cowan identifies twenty-four separate issues in his brief to the Court. Nonetheless, not all of these issues are supported by argument and/or authority. As such, we will not address those issues because this Court does not consider issues not supported by argument or authority. *KEB Enterprises, L.P. v. Smedley*, 140 Idaho 746, 754, 101 P.3d 690, 698 (2004) (citing *Hei v. Holzer*, 139 Idaho 81, 73 P.3d 94 (2003)).[4]

Cowan addresses many issues surrounding Bawden's application which can be divided into three types of arguments: (1) due process violations, (2) arbitrary and capricious actions by the Board, and (3) decisions by the Board not supported by the evidence. Additionally, Cowan asserts that the Board's appeals fee increase violated his due process rights. For each error Cowan asserts, he argues that his substantive rights have been prejudiced; therefore, he concludes, this Court must reverse the Board's decisions approving Eagle's Nest and remand with instructions to deny the application.

We will first address Cowan's arguments relating to the increased appeals fee and then address the Board's contention that this appeal is non-justiciable. We will then turn to Cowan's arguments relating to the approval of Bawden's application.

### A. Increased Appeals Fee

At the outset of this litigation, Fremont County charged an $80 fee for an administrative appeal, but it increased this fee to $550.00 in May 2001. This increase applied to Cowan's appeals filed after May 2001. Cowan argues, therefore, that this increase represents an "excessive appeal fee" that prevents parties from seeking review of planning and zoning decisions and thus violates due process. The Board contends that Co-

---

4. Under this standard, we will not consider Cowan's arguments relating the chronological order of the Board's decisions or his argument that

the Board's failure to inform him of which wetlands protection requirements applied to Eagle's Nest violated his due process.

wan lacks the standing to make his argument and that the argument is moot because he did not properly appeal this legislative action taken by the County.

 While such a large fee increase could implicate due process concerns if it were unreasonable or were used to discourage appeals, this Court lacks jurisdiction to examine the County's fee increase by direct judicial review. To begin, the decision to raise the appeals fee was a legislative act. "Legislative activity . . . is differentiated from quasi-judicial activity by the result—legislative activity produces a rule or policy which has application to an open class whereas quasi-judicial activity impacts specific individuals, interests or situations." *Burt v. City of Idaho Falls*, 105 Idaho 65, 67, 665 P.2d 1075, 1077 (1983). While legislative actions by counties are subject to collateral actions such as declaratory judgments, they cannot be attacked by a petition for judicial review. *Scott v. Gooding County*, 137 Idaho 206, 208, 46 P.3d 23, 25 (2002). Therefore, because Cowan attacks a legislative action in his petition for review, this Court lacks jurisdiction to decide the issue under the procedural posture of Cowan's instant appeal.

## B. Justiciability

 Generally, justiciability questions are divisible into several sub-categories: advisory opinions, feigned and collusive cases, standing, ripeness, mootness, political questions and administrative questions. *See Miles v. Idaho Power Co.*, 116 Idaho 635, 639, 778 P.2d 757, 761 (1989). The Board contends that Cowan's claims relating to the first application are moot, and that Cowan lacks standing to pursue this appeal. We turn first to mootness and then to standing.

### 1. *Mootness*

Cowan argues that certain actions by the Board relating to the first application violate due process standards and Idaho statutes. The Board contends all the issues raised by Cowan relating to the first application are moot because Bawden indicated by letter that he was withdrawing his first application and because the Board concluded that since the FCDC does not allow for multiple simultaneous applications Bawden's first application was revoked.

 "A case is moot if it presents no justiciable controversy and a judicial determination will have no practical effect upon the outcome." *Goodson v. Nez Perce Bd. of County Comm'rs*, 133 Idaho 851, 853, 993 P.2d 614, 616 (2000) (citation omitted). Here, the record shows that Bawden wrote to both Cowan and the Board expressing his decision to file a second application rather than continuing to pursue his first application and that he later wrote the Board another letter stating that he would not act upon his first application. Moreover, neither he nor the Board has acted upon the first application since Bawden filed his second application more than five years ago. Therefore, there is no live controversy, and Cowan's arguments relating to the first application are moot.

### 2. *Standing*

 The Board argues that Cowan has failed to allege a distinct palpable injury or particularized harm he has suffered, but has instead only alleged generalized grievances. Therefore, the Board concludes Cowan lacks standing to pursue this appeal. In response, Cowan points out that he has demonstrated his land will be adversely affected and presented evidence that the proposed development would adversely impact his property rights and diminish his property value. This, he argues, is enough to demonstrate standing pursuant to *Evans v. Teton County*, 139 Idaho 71, 73 P.3d 84 (2003).

 Cowan has standing. In *Evans* this Court determined that in land use decisions, a party's standing depends on whether his or her property will be adversely affected by the land use decision. *See Evans*, 139 Idaho at 75, 73 P.3d at 88. This Court held "[t]he existence of real or potential harm is sufficient to challenge a land use decision." *Id.* at 76, 73 P.3d at 89. Like the appellants in *Evans* whose rural homes might be adversely affected by the development of a large resort development adjacent to their properties, Cowan's property might be adversely affected by the construction of Eagle's Nest adjacent

to his property. Therefore, Cowan has standing to pursue his claims.

## C. Due Process

Cowan argues the County violated his due process by: (1) P & Z failing to prepare written findings and conclusions and the Board issuing conclusory findings and conclusions; (2) limiting public comment; (3) issuing confusing notices; (4) failing to inform the public of which state or federal wetlands protection requirements apply to the development prior to the hearing; and (5) violating the "appearance of fairness doctrine." Additionally, Cowan argues that the FCDC's section on wetlands protections is void for vagueness. For every violation, Cowan seeks to have this Court reverse the Board's determination.

▆▆▆ Since decisions by zoning boards apply general rules to "specific individuals, interests or situations," and are "quasi-judicial in nature" they are subject to due process constraints. *Chambers v. Kootenai County Bd. of Comm'rs*, 125 Idaho 115, 118, 867 P.2d 989, 992 (1994). "Procedural due process requires that there must be some process to ensure that the individual is not arbitrarily deprived of his rights in violation of the state or federal constitutions." *Aberdeen–Springfield Canal Co. v. Peiper*, 133 Idaho 82, 91, 982 P.2d 917, 926 (1999) (internal quotations omitted). In planning and zoning decisions, due process requires: (a) notice of the proceedings, (b) a transcribable verbatim record of the proceedings, (c) specific, written findings of fact, and (d) an opportunity to present and rebut evidence. *Chambers*, 125 Idaho at 118, 867 P.2d at 992. "Due process is not a concept to be applied rigidly in every matter. Rather, it is a flexible concept calling for such procedural protections as are warranted by the particular situation." *Aberdeen–Springfield Canal Co.*, 133 Idaho at 91, 982 P.2d at 926 (internal quotations and citations omitted). Due process issues are generally questions of law, and this Court exercises free review over questions of law. *Idaho Historic Preservation Council, Inc. v. City Council of City of Boise*, 134 Idaho 651, 654, 8 P.3d 646, 649 (2000).

We will deal with each of Cowan's due process arguments in turn; however, before addressing these substantive arguments, this Court must examine the Board's contention that Cowan has waived his due process arguments on appeal by failing to raise them below.

### 1. *Waiver*

The Board argues that Cowan waived his due process arguments because he failed to address them in his first four petitions for review and raised constitutional due process challenges for the first time in his fifth petition for review concerning wetlands compliance. Cowan contends that he raised due process challenges before the Board at its January 22, 2004 hearing, so he did not waive these arguments. Moreover, Cowan continues, he did raise due process claims in his prior petitions for review.

▆▆▆ Cowan also makes much of the fact that the Board cites to *Roell v. Boise City*, 134 Idaho 214, 999 P.2d 251 (2000), and *Whitehawk v. State*, 119 Idaho 168, 804 P.2d 341 (Ct.App.1991), to support its contention that arguments raised for the first time on appeal are waived. He argues that these cases are factually distinguishable and should not apply to the current situation because they deal with the failure to raise an issue at trial and then attempt to present that issue before the appellate court. However, these are distinctions without a difference for purposes of determining waiver. Here, Cowan presented his due process claims to the district court and then that court remanded the case to the Board for determination of a factual issue. Moreover, our case law makes it clear that constitutional issues not raised before a board of commissioners will not be considered on appeal. *Butters v. Hauser*, 125 Idaho 79, 82, 867 P.2d 953, 956 (1993). Therefore, this Court will not consider on appeal any issue not raised below.

This Court must determine, then, whether Cowan raised his due process challenges below. The record shows that he raised them in his brief to the Board on his appeal of the final plat. Moreover, in Cowan's third petition for judicial review, the first to seek

review of the Board's actions relating to the second application, and his fifth petition for judicial review, the only petition filed after the hearing on remand, Cowan again raised all of the due process arguments he is now seeking to have this Court resolve. For instance, in the third petition Cowan contends that the Board erred by limiting public comment, by failing to issue written findings and conclusions, by considering the final plat before resolving the appeal of the preliminary plat, and by failing to comply with the FCDC's requirements for final notice. Additionally, in his fifth petition, Cowan argues the FCDC deprived him of his due process rights by "failing to specify the particular federal and state wetlands protection requirements with which [Eagle's Nest] must comply." Therefore, because Cowan raised these issues below he has not waived them and we will consider each.

### 2. *Written findings and conclusions*

Cowan first argues P & Z violated I.C. § 67–6535 by failing to prepare written findings and conclusions "at any time."[5] Additionally, Cowan contends the Board-issued findings were conclusory or ignored arguments presented at the appeals hearings. The Board responds that P & Z adopted in full the administrator's written report and score sheet, and this score sheet is a highly detailed document which substantially complies with I.C. § 67–6535(b). In the alternative, the Board argues that I.C. § 67–6535(b) does not apply to planning and zoning commissions because they act in a purely advisory role.

■ For "effective judicial review of the quasi-judicial actions of zoning boards, there must be ... adequate findings of fact and conclusions of law." *Workman Family*

*P'ship v. City of Twin Falls,* 104 Idaho 32, 36, 655 P.2d 926, 930 (1982). Conclusory statements are not sufficient; instead "[w]hat is needed for adequate judicial review is a clear statement of what, specifically, the decisionmaking body believes, after hearing and considering all of the evidence, to be the relevant and important facts upon which its decision is based." *Id.* at 37, 655 P.2d at 931 (quoting *S. of Sunnyside Neighborhood League v. Bd. of Comm'rs,* 280 Or. 3, 21–22, 569 P.2d 1063, 1076–77 (1977)). However, a board of commissioners may adopt a planning and zoning commission's findings and conclusions because I.C. § 67–6535 requires only that findings and conclusions be made. *Evans,* 139 Idaho at 80, 73 P.3d at 93.

■ The Board is correct in its argument that I.C. § 67–6535(b) does not apply to the decisions by P & Z.[6] The interpretation of a statute is a question of law over which this Court exercises free review. *See, e.g., Martin v. State Farm Mut. Auto. Ins. Co.,* 138 Idaho 244, 246, 61 P.3d 601, 603 (2002). The objective of statutory construction is to derive the intent of the legislature. *Kelso & Irwin, P.A. v. State Ins. Fund,* 134 Idaho 130, 134, 997 P.2d 591, 595 (2000). Statutory construction begins with the literal language of the statute. *D & M Country Estates Homeowners Ass'n v. Romriell,* 138 Idaho 160, 165, 59 P.3d 965, 970 (2002). Where a statute is unambiguous, statutory construction is unnecessary and courts are free to apply the plain meaning. *Martin,* 138 Idaho at 246, 61 P.3d at 603.

■ Idaho Code § 67–6535(b) requires that the approval or denial of any application, among other things, be in writing. However, I.C. § 67–6504 reserves the authority to approve or deny land subdivisions to the board of county commissioners.[7] Therefore, LLU-

---

5. Cowan also argues that the Board violated this section by failing to make a transcribable recording of its work session held on January 25, 2001. However, this argument is moot as it relates to the first application.

6. The FCDC requires that all decisions by P & Z and the Board be "reported in the form of findings of fact and conclusions of law, as required by I.C. 67–6535." FCDC Ch. III(R). It also provides that the administrator's report "shall be presented in a form that can serve as a basis for

[P & Z's] findings of fact" and that the "completed performance standards checklist shall be considered to constitute the conclusions of law." *Id.*

7. Idaho Code § 67–6504 provides in pertinent part: "If a governing board does not elect to exercise the powers conferred by this chapter, it shall establish ... a planning and zoning commission ..., which may act with the full authority of the governing board, excluding the authority ... to finally approve land subdivisions."

PA by its very terms applies the requirements of I.C. § 67–6535(b) only to governing boards. These requirements, therefore, do not apply to P & Z because it lacks the authority to finally approve or deny an application for a subdivision under I.C. § 67–6504. As such, P & Z did not violate I.C. § 67–6535(b).

■ We turn now to Cowan's argument that the Board issued conclusory findings and conclusions. Idaho Code § 67–6535(b) also requires that written findings be

accompanied by a reasoned statement that explains the criteria and standards considered relevant, states the relevant contested facts relied upon, and explains the rationale for the decision based on the applicable provisions of the comprehensive plan, relevant ordinance and statutory provisions, pertinent constitutional principles and factual information contained in the record.

However, Cowan does not argue that the Board failed to include any of this required information, rather he provides examples or suggestions of conclusory findings all related to the Board's determination that Bawden had met his burden of proof. A review of the various written findings and conclusions reveals that the Board complied with the requirements of I.C. § 67–6535(b) because it included the criteria and standards it considered relevant, provided detailed facts, and explained its rationale for its decisions. Therefore, we hold that the Board's written findings and conclusions did not violate Cowan's due process rights. We need not, then, reach the second step of the analysis to determine if Cowan's substantial rights were violated because he has failed to demonstrate error in this instance.

3. *Limiting public comment*

Cowan also argues P & Z violated his due process rights by (1) refusing to take public comments when considering the final plat and (2) by "unreasonably" limiting public comment to a "few minutes" for each speaker at hearings to consider the preliminary plat. The Board points out that Cowan had numerous opportunities to provide comment. Moreover, it argues, the FCDC does not require taking public comment when considering final plats and also allows for limiting public comments so that P & Z will be able to finish their agenda. In addition, the Board argues, even if the limits on public comments were "unreasonable," Cowan's comments were not restricted.

■ Procedural due process requires:

some process to ensure that the individual is not arbitrarily deprived of his rights in violation of the state or federal constitutions. This requirement is met when the defendant is provided with notice and an opportunity to be heard. The opportunity to be heard must occur at a meaningful time and in a meaningful manner in order to satisfy the due process requirement.

*Aberdeen–Springfield Canal Co.,* 133 Idaho at 91, 982 P.2d at 926 (internal quotations and citations omitted); *see also Castaneda v. Brighton Corp.,* 130 Idaho 923, 926, 950 P.2d 1262, 1267 (1998).

■ Here, P & Z's actions did not violate Cowan's due process rights. Even assuming *arguendo* that P & Z's request to limit public comments to a few minutes per speaker prevented other citizens from presenting evidence and rebutting arguments, it afforded Cowan an opportunity to be heard at a meaningful time and in a meaningful manner. The record reveals that Cowan's attorney spoke at length and presented evidence during the hearing on the preliminary plat and during the appeals hearings before the Board. Cowan also spoke. As such his due process rights were not violated during the hearing on the preliminary plat or during the appeals hearings. However, although we hold that Cowan's due process rights were not violated, limiting public comment to two minutes is not consistent with affording an individual a meaningful opportunity to be heard.

Moreover, neither the LLUPA nor the Idaho subdivision statutes specifies requirements for notice and hearing on subdivision application approval. *See* I.C. § 67–6513; §§ 50–1301 to 50–1334. The FCDC provides for notice and hearing when P & Z considers preliminary plats, but provides that "[n]o public notice or hearing is required for final

plats...." FCDC Ch. III(I)(10)(b). However, this is not a constitutional violation because due process requires only an opportunity to be heard "at a meaningful time and in a meaningful manner." *Castaneda*, 130 Idaho at 927, 950 P.2d at 1266 (quoting *Sweitzer v. Dean*, 118 Idaho 568, 573, 798 P.2d 27, 32 (1990)). Here, Cowan was given the opportunity to be heard at the most meaningful time-at the public hearing on the preliminary plat—and therefore his due process rights were not violated. *See id.* Therefore, we hold that P & Z's actions did not violate Cowan's due process rights.

### 4. *Notice for certain Board Meetings*

Cowan asserts that the notices given for the July 30, 2001, August 23, 2001 and September 11, 2001 Board meetings were defective. The FCDC requires that notices for subdivision permit hearings provide the name and address of the developer, the address and a legal description of the development site, the present and proposed land use of the development site, the proposed number of lots and the average size of lots. FCDC Ch. III(K). It also requires notice that the application material is available for public review and that public comment is encouraged. *Id.*

■ Here, the Board concedes that both notices were defective. Nonetheless, Cowan has failed to demonstrate that his substantial rights were prejudiced by either defective notice. First, Cowan's counsel attended the July 30, 2001 hearing and submitted a brief objecting to the notice. Moreover, Cowan spoke against the application at that hearing. Therefore, even if the notice were defective, Cowan has failed to demonstrate how this defect prejudiced his substantial rights since he clearly had notice of the meeting.

Second, once the Board recognized that its notice for the August 23, 2001 meeting was defective it canceled the meeting and then scheduled a properly noticed meeting for September 11, 2001. Cowan argues that because the notice for the August meeting was defective, the notice for the September meeting is also defective because it creates "general confusion" and "leaves the public bewildered." Judge Moss aptly analyzed this claim:

> This theory is not even remotely persuasive. Even if the public was left bewildered (which has not been shown), a bewildered public—though an unfortunate situation—is not the standard by which courts determine whether notices are adequate. Idaho law and [the FCDC] prescribe the requirements for notices of public meetings and hearings and the notice for the September 11 hearing complied with these requirements.

Therefore, Cowan has failed to demonstrate that the Board erred by holding the defectively noticed July 30, 2001 meeting, cancelling the August 23, 2001 meeting or holding the properly noticed September meeting.

### 5. *Wetlands ordinance*

■ Cowan argues that the FCDC's wetlands protection requirement is void for vagueness because the "current language is so vague that effectively no notice is given regarding the wetlands requirements." Statutes that are found to be vague, indefinite or uncertain are in violation of the constitutional provisions found in the Fourteenth Amendment to the United States Constitution or Article I, section 13 of the Idaho Constitution. *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 715, 791 P.2d 1285, 1294 (1990).

> It is a general principle of statutory law that a statute must be definite to be valid. It has been recognized that a statute is so vague as to violate the due process clause of the United States Constitution ... where its language is such that men of common intelligence must necessarily guess at its meaning.

*Id.* (quoting 16A Am.Jur.2d, *Constitutional Law* § 818, p. 988).

■ Although most decisions invoking the "void for vagueness" doctrine deal with criminal statutes and ordinances, the doctrine applies equally well to civil ordinances. *Id.* at 716, 791 P.2d at 1295. "However, greater tolerance is permitted when addressing a civil or non-criminal statute as opposed to a criminal statute under the void for

vagueness doctrine." *Id.* (citing *Chalmers v. City of Los Angeles,* 762 F.2d 753 (9th Cir. 1985)).

■ The wetlands protection requirement of the FCDC is not unconstitutionally vague. The FCDC provides: "All developments shall demonstrate compliance with state and federal wetlands protection requirements." FCDC Ch. VIII(D)(1). A person of ordinary intelligence would not have to guess at its meaning. This section of the FCDC clearly delineates the subject of its protection—wetlands—and identifies that a developer must comply with all state and federal protection requirements. The fact that a developer would then need to determine which of these numerous protections might be applicable does not make the ordinance constitutionally infirm. Since many of the federal wetlands protection requirements depend upon what type of development or construction is taking place near a wetland, the county could not anticipate specifically which requirements apply until a development application is submitted. Additionally, the core meaning of the ordinance is clear on its face. *See Olsen,* 117 Idaho at 715, 791 P.2d at 1294 (citing *Cotton States Mut. Ins. Co. v. Anderson,* 749 F.2d 663 (11th Cir. 1984)).[8] Therefore, the FCDC's wetlands protection requirement is not void for vagueness and does not violate the United States or Idaho constitutions.

#### 6. *Appearance of fairness doctrine*

Finally, based on a line of cases from Washington, Cowan argues that because this was a zoning decision, the decisionmakers and hearings on the matter needed to not only *be* fair and impartial, but also *appear* fair and impartial. He contends that comments made by a Commissioner and a consultant, as well as the Board's actions, which allegedly violated his due process, all indicate an indifference to the appearance of fairness. He urges this Court to adopt this doctrine and reverse the Board's decision because of its indifference to the appearance of fairness and impartiality.

In the early 1970's the Supreme Court of Washington issued its decision in *Chrobuck v. Snohomish County,* 78 Wash.2d 858, 480 P.2d 489 (1971). There, Atlantic Richfield Company sought to re-zone land embracing beach frontage on Puget Sound. After the county changed the comprehensive plan and granted the company's petition, Chrobuck sought judicial review of the Commissioner's action. The Court determined that Chrobuck's due process rights had been violated, despite a lack of evidence of any dishonest or self-serving conduct by the Commissioners, by "an unfortunate combination of circumstances . . . and the cumulative impact thereof [which] inescapably cast an aura of improper influence, partiality and prejudgment over the proceedings." *Id.* at 870, 480 P.2d at 496. Based on an earlier case, the Washington Supreme Court found that under that state's law a hearing must be fair in both appearance and substance. *Id.*

■ This Court has never adopted the appearance of fairness doctrine of our westerly neighbor. Rather, we recognize that due process "entitles a person to an impartial and disinterested tribunal[,]" but we require a showing of actual bias before disqualifying a decision maker even when a litigant maintains a decision maker has deprived the proceedings of the appearance of fairness. *Davisco Foods Int'l, Inc.,* 141 Idaho at 791, 118 P.3d at 123. Additionally, the Washington Supreme Court has stepped back from this doctrine. *See* W.T. Watterson, *What Ever Happened to the Appearance of Fairness Doctrine? Local Land Use Decisions in an Age of Statutory Process,* 21 Seattle U.L.Rev. 653 (1998). We therefore decline to adopt this doctrine and refrain from reaching the substance of Cowan's argument that certain statements and actions violated the appearance of fairness doctrine.

### D. Arbitrary and Capricious Actions

Cowan next argues the approval of Eagle's Nest should be reversed because the Board acted arbitrarily and capriciously in inter-

---

**8.** Additionally, as discussed *infra,* the FCDC places the burden of proof on the developer. As such, the developer has the burden of demon-

strating compliance with all applicable state and federal wetlands protection requirements.

preting the burden of proof requirement of the FCDC, by failing to enter into a development agreement with Bawden prior to approving the final plat, and by failing to correctly apply section 402 of the Clean Water Act. He also asserts that the Board abused its discretion by not requiring Bawden to show a master plan for all of his properties.

The Board's actions may be reversed if this Court finds the Board acted arbitrarily, capriciously or abused its discretion. *Eacret*, 139 Idaho at 784, 86 P.3d at 498. However, planning and zoning decisions are entitled to a strong presumption of validity, including the board's application and interpretation of their own zoning ordinances. *Sanders Orchard*, 137 Idaho at 698, 52 P.3d at 843.

### 1. *Burden of proof*

Cowan asserts that Bawden failed to meet the burden of proof required by the FCDC. The FCDC, Cowan continues, implements the Comprehensive Plan and also requires Bawden, the developer, to "affirmatively prove" that Eagle's Nest has complied with all of the provisions of both the FCDC and the Comprehensive Plan.

Chapter I of the FCDC provides that "[t]he burden of proof shall, in all proceedings pursuant to this ordinance, rest with the developer." FCDC Ch. I(I). Noticeably, this section does not define the burden of proof. In interpreting this section, the Board concluded that this section does not require a developer to "personally and independently prove compliance with each code requirement at each stage of the permit procedure." Instead, the developer "is entitled to rely upon the administrator's report, and the checklist submitted by the administrator in meeting his/her burden of proof."

Here, the problem lies with the imprecise term "burden of proof." "Burden of proof" encompasses both the burden of production and the burden of persuasion. *Intermountain Health Care, Inc. v. Bd. of County*

*Comm'rs of Blaine County*, 107 Idaho 248, 251, 688 P.2d 260, 263 (Ct.App.1984) (quoting E. Cleary, McCormick on Evidence § 357 (3d ed.1984)); *see also Smith v. Angell*, 122 Idaho 25, 31, 830 P.2d 1163, 1169 (1992) (Bistline, J., concurring) (citing *Cole–Collister Fire Prot. Dist. v. City of Boise*, 93 Idaho 558, 569, 468 P.2d 290, 301 (1970); *Harman v. Northwestern Mut. Life Ins. Co.*, 91 Idaho 719, 721, 429 P.2d 849, 851 (1967); G. Bell, Handbook of Evidence for the Idaho Lawyer 215 (2d ed.1972); McCormick on Evidence § 336 (2d ed.1982); Thayer, The Burden of Proof, 4 Harv. L.Rev. 45 (1890)); Black's Law Dictionary 209 (8th ed.2004). The Board's interpretation keeps the burden of persuasion on Bawden, but allows the burden of production to be satisfied by relying on evidence not introduced by Bawden. The issue becomes, then, whether the Board's interpretation allowing Bawden to rely on evidence already before the Board is arbitrary or capricious.

■ We cannot find that the Board's interpretation is arbitrary or capricious. First, the FCDC creates a structure which anticipates using the administrator's report as evidence. The FCDC grants the administrator the duty and power to issue certificates of compliance and the ability to arrange for professional review of Class II permit applications.[9] As such, the developer presents evidence to the administrator or professional reviewer who, in turn, analyzes the evidence and compiles a report. The cost of this review is covered by the application fee. FCDC Ch. III(I)(4). Once the administrator receives the professional review report, he or she must provide a copy to the developer and make a copy available for public review. *Id.*[10] Second, the Board never removed the burden of persuasion from Bawden. At all times Bawden was required to persuade the fact finder (P & Z or the Board) that Eagle's Nest complied with the FCDC and the Comprehensive Plan. Therefore, there is nothing arbitrary or capricious about the Board al-

9. The FCDC creates a Zoning Administrator and allows him or her to "arrange for professional review of applications for Class II permits" and to "issue certificates of compliance, based on site inspections ..." FCDC Ch. II(D)(4)-(5).

10. This procedural safeguard of having the administrator's report made available for public review avoids the problems seen in *Fischer v. City of Ketchum*, 141 Idaho 349, 109 P.3d 1091 (2005).

lowing Bawden to rely on this evidence (which he originally provided) while continuing to have him carry the burden of persuasion.

### 2. *Master Plan*

Cowan contends Bawden failed to show a master plan for his entire property because the plat does not show his plan for developing the five-acre parcel northwest of Eagle's Nest or the sixty-two acres east of Eagle's Nest. The failure to comply with this "absolute requirement" to show overall planning, Cowan argues, is a basis to disapprove Bawden's application.

■ Here, the Board did not err. First, while the FCDC requires master planning, it does not require denial of an application for failure to meet this requirement. Rather, it provides: "Any application for a Class II permit for a subdivision *may* be disapproved solely on the basis that it fails to show an overall plan for the development of the entire contiguous holdings of the developer and/or owner." FCDC Ch. XII (D) (emphasis added). Therefore, the FCDC does not require the Board to deny Bawden's application. Second, the decision not to deny the application based on this section of the FCDC is consistent with the Board's factual findings. As discussed *infra,* the Board found that the entire 147 acres were not one development site, but rather two contiguous, separately-owned parcels. Therefore, following this logic, because Bawden provided a plan for the larger parcel, Bawden provided an overall plan for the entire development; the possibility of denial based on FCDC Ch. XII (D) never arose.

### 3. *Development agreement*

Cowan argues that since Bawden proposed to develop Eagle's Nest in phases, the FCDC requires Bawden to enter into a development agreement before any Final Plat of any proposed phase can be reviewed or approved. In response, the Board contends that P & Z acted properly by recommending approval subject to the execution of a development agreement because only the Board has the authority to enter into a development agreement.

■ Cowan's argument lacks support in both the FCDC and the Idaho Code. The FCDC allows developers to offer phases in developments pursuant to a development agreement which contains certain specific provisions. FCDC Ch. XIII (E). However, I.C. § 67–6512(a) provides: "A special use permit may be granted to an applicant if the proposed use is conditionally permitted by the terms of the ordinance . . . ." In turn, the FCDC provides that "[c]onditions may be imposed on the approval of any permit or variance . . . ." FCDC Ch. III(J). It is logical, then, to condition approval of a plat on the acceptance of a development agreement.

Additionally, a development agreement is a contract between the County and the developer and gives the developer vested rights in the plat. FCDC Ch. XIII (E)(2)(h). Therefore, an approved plat must be in place before the County grants the developer vested rights in such a plat. Moreover, when examining a similar county ordinance providing that a written agreement may be required, this Court determined that the decision to enter into a development agreement is discretionary. *Price v. Payette County Bd. of County Comm'rs,* 131 Idaho 426, 431, 958 P.2d 583, 588 (1998). Although entering a development agreement is mandatory under the FCDC, it follows from *Price* that the decision as to *when* to enter the agreement is discretionary. Thus, we hold P & Z did not err by conditioning its approval on the acceptance of a development agreement.

### 4. *Wetlands*

■ After the first appeal, the district judge remanded the case to the Board to decide only one narrow issue: whether the proposed development complied with the FCDC's wetlands protection requirement.[11] The Board then held a hearing, took both

---

**11.** The FCDC requires that all developments demonstrate compliance with state and federal wetlands protection requirements. FCDC Ch. VIII(D). There are approximately three acres of established wetlands on the northernmost portion of the proposed development in Bawden's second application.

oral and written comments, and issued its findings and conclusions relating to this issue. Cowan first contends Bawden failed to adequately address section 402 of the Clean Water Act during the hearing on remand and failed to demonstrate that Bawden's application complied with that section's requirements as required by the FCDC. He then argues that the Board misapplied section 402. Therefore, Cowan continues, the Board erred in approving Bawden's application.

Cowan's first argument fails. Bawden presented evidence at the hearing relating to *section 402 and provided analysis as to his* compliance with section 402 in his subsequent briefs. Moreover, it would be illogical to find that Bawden could not respond to an argument raised at the hearing by Cowan. Such a conclusion would require every developer to anticipate every possible argument raised *and address those arguments prior to know-* ing exactly what they are. A search of case law finds no support for Cowan's implicit contention that a developer must address an issue at a hearing rather than through briefing. Likewise, there is simply no reason that the Board cannot accept Bawden's arguments that the requirements of section 402 do not apply—to act as fact finder is the function of the Board. As such, we find no error and decline to reverse the Board's decision on this ground.

█ Next, Cowan's argument that the Board misapplied section 402 also fails. Cowan strenuously asserts that Eagle's Nest is subject to the requirements of section 402 because the development will disturb more than one acre of land near wetlands. However, in addition to this requirement, Section 402 also has more particular requirements. Section 402 of the Clean Water Act, 33 U.S.C. § 1342, requires permits for any discharge of pollutants from a point source. *Natural Res. Def. Council, Inc. v. United States Envtl. Prot. Agency,* 966 F.2d 1292, 1295 (9th Cir.1992). "A 'point source' is 'any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel … from which pollutants are or may be discharged.'" *Id.* (quoting 33 U.S.C. § 1362(14)). It follows, therefore, that if a development will not discharge pol-

lutants from a point source, it is not subject to the requirements of Section 402. Thus, since the Board found that there would be no discharge into the wetlands near Eagle's Nest, and such a conclusion is supported by the record, *see infra,* the Board reasonably applied section 402. Once again, we find no error and decline to reverse the Board's decision on this ground.

## E. Substantial and Competent Evidence

Cowan asserts that the Board erred because certain of its decisions lack support in the record. Cowan argues that Bawden failed to address certain federal wetlands requirements at the hearing before the Board, so it erred by determining that the development complied with the FCDC. Cowan also contends that the Board's decision that Bawden had not illegally split his lot is unsupported by the record. Finally, Cowan argues that the Board erred when it determined that the development complied with the FCDC's requirements regarding public access to public lands, protection of slopes, protection of wildlife habitat, and visually sensitive areas.

█ The Board's factual determinations are binding on this Court, "even where there is conflicting evidence before the [Board], so long as the determinations are supported by substantial competent evidence…." *Fischer v. City of Ketchum,* 141 Idaho 349, 351, 109 P.3d 1091, 1094 (2005) (quoting *Evans,* 137 Idaho at 430, 50 P.3d at 445). Substantial and competent evidence is less than a preponderance of evidence, but more than a mere scintilla. *Evans v. Hara's, Inc.,* 123 Idaho 473, 478, 849 P.2d 934, 939 (1993). Substantial and competent evidence need not be uncontradicted, nor does it need to necessarily lead to a certain conclusion; it need only be of such sufficient quantity and probative value that reasonable minds could reach the same conclusion as the fact finder. *See Mann v. Safeway Stores, Inc.,* 95 Idaho 732, 736, 518 P.2d 1194, 1198 (1974).

### 1. *Wetlands*

█ Cowan continues his arguments surrounding the FCDC wetlands protection requirements by asserting that Bawden failed

to prove that Eagle's Nest complied with this portion of the FCDC. However, the Board's decision that Section 402 does not apply and that Bawden has complied with the FCDC is supported by substantial and competent evidence. Two separate, qualified witnesses testified that Eagle's Nest did not need any permits under Section 402; another witness presented evidence that Eagle's Nest complied with the FCDC's wetlands protection requirements.[12] Therefore, the Board's decision is supported by substantial and competent evidence.

## 2. *Illegal lot split*

Cowan maintains that the entire 148 acres owned by Bawden is one lot because Bawden intends to develop it all. Cowan argues the Board should not have approved the final plat on Bawden's second application because Bawden twice split his "lot" illegally. First, Cowan argues, Bawden split off the five-acre parcel now owned by his son and then "split" the smaller parcel, which Bawden intends to personally occupy, from the development.[13]

After holding a hearing on the final plat for Bawden's second application, the Board determined that Bawden had not split his lots. The Board found no evidence that the entire 148–acre parcel was one development site and no evidence that Bawden had split the smaller parcel he retains from the larger parcel that is the site of Eagle's Nest. The Board then determined neither the law nor the evidence supported that separately-purchased but contiguous parcels are a single lot for purposes of the FCDC.

Here, the Board determined that Bawden had not illegally split his lot. The FCDC provides: "Lot is used both as a generic term for a development site, and to refer to

any parcel of land created and described by a record survey or plat." FCDC Ch. XIV(KK). All of the evidence in the record indicates that Bawden separately purchased two parcels of land either personally or through his family or business entity and now proposes to develop only one of those parcels. Cowan, has never contradicted this evidence, offering only argument that these two parcels should be considered one lot or one development site. Additionally, the lot now owned by Eric Bawden was split off pursuant to a Class I permit, and this was not an illegal lot split. Therefore, the Board's determination is supported by substantial and competent evidence.

## 3. *Performance standards*

When determining whether to approve or deny a Class II permit application, the FCDC sets out performance standards for P & Z and the Board to consider. FCDC Ch. V. The FCDC requires full compliance with certain standards, "absolute performance standards," and mandates rejection of an application if one of these standards is not met. FCDC Ch. V(B). The FCDC also creates "relative performance standards." FCDC Ch. V(D). For each of these standards the proposed project earns or loses points based on the extent to which the proposed project complies with the standard. FCDC Ch. V(D)(2). Once the standard is scored, that score is then multiplied by that standard's "importance factor" to achieve a final score. FCDC Ch. V(J)(3). If the sum of all the scores for relative performance standards is zero or greater, assuming the project otherwise complies, the application will be approved. FCDC Ch. V(J)(4). If the sum is less than zero, the application will be denied.

---

**12.** As the district court noted:

> The Board received testimony from Ray Kagel of Lone Goose Environmental, LLC. Mr. Kagel, after reciting why he was qualified to speak on the matter, testified that he delineated the wetland boundary and that the Army Corp of Engineers approved said delineation. Mr. Kagel further testified that there was no need for any federal or state permits because there is not a discharge into a wetland or stream. Mr. Richard Byrem, a surveyor who has worked on the proposed development, testified, "... there's no need for permits to be

> issued." Also, the planning and zoning administrator, Karen Lords, reported to the Board via written and oral presentation as to how the development complied with the [FCDC].

**13.** There is some indication in the record that Bawden purchased the two lots separately and that the lots are actually owned by two different entities. However, the Board does not argue that Bawden does not personally own both lots so he cannot, therefore, have "split" them illegally. Thus, this section will deal only with the arguments raised and argued by the parties.

First, Cowan argues that the Board erred in determining that Bawden's application met the absolute performance standard for public access. Second, Cowan argues the Board erred in assigning Eagle's Nest a positive score for certain relative performance standards. We will address each of these standards in turn.

### a. Absolute performance standard—public access

Cowan argues the Board erred in approving the Development because the FCDC requires that historic public access to public lands not be eliminated, and the plat failed to show all currently-used, existing roads across "the property." Therefore, he continues, Bawden failed to comply with this absolute standard.

The FCDC provides: "No development shall eliminate existing public access through private lands to trailheads on public lands." FCDC Ch. VIII(MM)(1). In turn, it uses development "as a generic term covering any and all activities for which a permit is required" by the FCDC. FCDC Ch. XIV (V).

Once again, the Board's decision that the road at issue did not cross the development site is supported by substantial and competent evidence, and therefore it did not err. As discussed previously, Eagle's Nest is a development on one parcel of land. While Bawden owns the neighboring parcel to the east, these two parcels remain separate, as the Board concluded based on the evidence before it. While there is some indication that the road crosses the parcel of land Bawden retains for his personal use, there is simply no evidence that it crosses the Eagle's Nest development and will be eliminated by the development. As such, this development has not violated the FCDC's prohibition on eliminating existing public access.

### b. Relative performance standards

#### i. Slopes

The FCDC encourages developers to provide open space on slopes between fifteen and thirty percent. The Administrator awarded Eagle's Nest a score of +12 because the use of building envelopes, areas where land owners cannot build, would protect slopes. Cowan argues the Board should have accepted his expert's score of zero, but this request is nothing more than asking this Court to review a factual finding.

■ After the hearing on the final plat, and considering both the Administrator's score and the testimony of Cowan's expert, the Board found that the final plat included slope information and determined that the project proposed building envelopes which prevented the development from disturbing slopes. Since no slopes would be disturbed, the Board concluded, the score given by the Administrator was appropriate.

Here, the Board heard and considered conflicting evidence. It chose to rely on the evidence presented by the Administrator, and such evidence is both substantial and competent. That it chose to rely on evidence other than the testimony of Cowan's expert is not error.

#### ii. Wildlife habitat

Cowan argues that the score of zero for wildlife habitat was error. His expert testified that Eagle's Nest is in critical wildlife habitat. Cowan concedes that the development is not included at all on the natural resource inventory map, but argues that this is because at the time the map was prepared the land was part of a National Forest and only private land was mapped. This, he contends, should have led the Board to conclude that the land was critical wildlife habitat because had the land been privately owned when the map was prepared it would have been included as critical wildlife habitat.

The FCDC defines critical wildlife habitat as "[a]ny area that provides the environmental factors required for the survival of a particular species of wildlife. Critical wildlife habitat includes all important habitat areas shown on the natural resource inventory maps prepared for the county, or other areas so identified by the Idaho Fish and Game Department." FCDC Ch. XIV (DDDD) (emphasis removed).

After holding a hearing on the final plat for the second application, the Board determined that Eagle's Nest was not included on

the map when the natural resources inventory maps were prepared and for that reason the development was not scored. It then determined that the development was not in a critical wildlife area.

Once again, the Board's decision is supported by substantial and competent evidence. Neither the existing maps nor letters from the Fish and Game Department place the development in critical wildlife habitat. While Cowan's expert opined differently, it was not error for the Board to rely on the existing maps and letters from the Fish and Game Department when making its determination that the development was not in critical wildlife habitat.[14]

### iii. Visually sensitive areas

Finally, Cowan argues that the proposed development will diminish the visual appeal of the Shotgun Valley. Rather than the zero awarded by the Administrator on this standard, Cowan contends Eagle's Nest should have received a negative score because Bawden did not propose clustered development as the FCDC encourages and because the development violates the policy contained in the Comprehensive Plan to direct development away from visually sensitive areas. The FCDC defines visually sensitive areas as those areas containing certain designations and "broadly delineated ... by the U.S. Forest Service." This delineation is based "on the view from major public roads and bodies of water." FCDC Ch. XIV (AAAA). The Board determined that because the development was not included on the forest service maps showing visually sensitive areas, the standard was not relevant and accepted the Administrator's score.

As before, Cowan is simply displeased with the Board's decision and asks this Court to review a factual finding. However, the Board's decision is supported by substantial and competent evidence. There was conflicting evidence presented as to whether the area would be visually sensitive if the maps

were redrawn. Moreover, it was not error for the Board to rely on the maps as they existed at the time Bawden filed his application.

The Board did not err in approving Bawden's application based on the scores given for relative performance standards. Each of its decisions is supported by substantial and competent evidence. Therefore, this Court is bound by the Board's factual findings and we affirm the Board's decisions relating to relative performance standards. Since we affirm each individual score, we need not reach Cowan's argument relating to the overall relative score.

### F. Attorney's Fees on Appeal

Both parties seek attorney's fees under I.C. § 12–117, which provides for the award of attorney's fees to the prevailing party if the other party acted without a reasonable basis in fact or law. Since Cowan has not prevailed on appeal, he is not entitled to attorney's fees. However, Cowan did not act entirely without a reasonable basis in fact or law, so we do not award the Board attorney's fees pursuant to I.C. § 12–117.

The Board also seeks attorney's fees pursuant to I.C. § 12–121. An award under this statute is appropriate if the Court is left with the abiding belief that the appeal was brought or defended frivolously, unreasonably or without foundation. *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Dixon*, 141 Idaho 537, 542, 112 P.3d 825, 830 (2005). This appeal was not brought frivolously, unreasonably or without foundation; therefore we refrain from awarding the Board attorney's fees under I.C. § 12–121.

### IV. CONCLUSION

We affirm the Board's approval of the application for a Class II permit. Cowan has either failed to show that the Board erred or failed to demonstrate that the Board's errors violated his substantial rights. Neither par-

---

**14.** Indeed, Idaho law is "well established that an applicant's rights are determined by the ordinance in existence at the time of filing an application for the permit." *Payette River Prop. Owners Ass'n v. Bd. of Comm'rs of Valley County*, 132 Idaho 551, 555, 976 P.2d 477, 481 (1999); *see also Canal/Norcrest/Columbus Action Comm. v. City of Boise*, 136 Idaho 666, 669, 39 P.3d 606, 609 (2001).

ty is awarded attorney's fees on appeal. Costs to Respondent.

Chief Justice SCHROEDER and Justices TROUT, EISMANN and JONES concur.

